## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **LORI BILEWICZ,** *et al.*, | ) | |
| and all others similarly situated, | ) | |
| | ) | |
| **Plaintiffs,** | ) | Civil Action No. 13-10636-DJC |
| vs. | ) | |
| | ) | **(Motion for Leave to Exceed** |
| **FMR LLC; FMR LLC INVESTMENT** | ) | **Page Limit Pending)** |
| **COMMITTEE;** | ) | |
| and John and Jane Does 1-25, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | | |
| **AIDEN YEAW, ALEX C. BROWN,** | ) | |
| and all others similarly situated, | ) | |
| | ) | |
| **Plaintiffs,** | ) | Civil Action No. 14-10035-DJC |
| vs. | ) | |
| | ) | |
| **FMR LLC; FMR LLC RETIREMENT** | ) | |
| **COMMITTEE;** | ) | |
| and John and Jane Does 1-25, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER

## I.     INTRODUCTION

Plaintiffs in *Bilewicz, et al. v. FMR LLC, et al.*, No. 13-10636-DJC (D. Mass.) ("Bilewicz

Plaintiffs"), and Plaintiffs in *Yeaw, et al. v. FMR LLC, et al.*, No. 14-10035-DJC (D. Mass.) ("Yeaw

Action"), ( "Yeaw Plaintiffs")[1], respectfully submit this memorandum in support of their unopposed

motion for an order: (1) consolidating the Actions; (2) conditionally certifying the Settlement Class[2]

as a non-opt-out class and appointing Class Counsel; (3) preliminarily approving the Settlement;

---

[1] The Bilewicz Plaintiffs and Yeaw Plaintiffs are together referred to as "Plaintiffs" or "Named Plaintiffs"; the Bilewicz Action and the Yeaw Action are together referred to as the "Actions."

[2] Capitalized terms herein have the definitions set forth in the Class Action Settlement Agreement submitted herewith as Ex. 1.

ACTIVE/73932530.3

(4) directing notice to Settlement Class Members and approving the plan and form of notice; (5) appointing KCC Class Action Services LLC as Settlement Administrator; (6) scheduling a Fairness Hearing; and (7) scheduling a hearing on Plaintiffs' motion for fees and costs and the payment of service awards ("Preliminary Approval Order").

Plaintiffs respectfully request that the Court enter the above-described order to preliminarily approve and begin implementation of the settlement negotiated by Plaintiffs and FMR LLC ("FMR") in these two actions. Plaintiffs and FMR seek to compromise and thereby settle all issues and claims alleged in the First Amended Class Action Complaint in the Bilewicz Action (the "Bilewicz Complaint", Dkt. No. 46) and all issues and claims alleged in the Class Action Complaint in the Yeaw Action (the "Yeaw Complaint", Dkt. No. 1)[3] on behalf of all members of the proposed Settlement Class. To that end, Plaintiffs and FMR have agreed to a settlement of the Actions that Class Counsel have determined will fairly and adequately compensate members of the proposed Settlement Class for the alleged harm arising out of Defendants' alleged fiduciary breaches in violation the Employee Retirement Income Security Act ("ERISA") during the period of March 20, 2007, through either (i) the date of the Settlement Agreement, or (ii) in the event that the Preliminary Approval Order is not entered before July 28, 2014, then July 28, 2014.

The proposed settlement is fair and meets the requirements for preliminary approval. In the process of negotiating and agreeing to the terms set forth in the Settlement Agreement, Class Counsel concluded that the Settlement Agreement is fair, reasonable and adequate, provides benefits to the Settlement Class that justify the corresponding release of claims, and is in the best interests of the Settlement Class. In reaching this conclusion Class Counsel considered: (1) the substantial benefits, including monetary and non-monetary relief, afforded to the Settlement Class by the proposed settlement; (2) the risks and uncertainties attendant to complex litigation such as the

---

[3] The Bilewicz Complaint and Yeaw Complaint are together referred to as the "Complaints."

ACTIVE/73932530.3

Actions; (3) the expense and length of time necessary to prosecute the Actions through trial and any subsequent appeals; and (4) the desirability of consummating the Settlement Agreement promptly to provide effective relief to the members of the Settlement Class, and (5) the opportunity, negotiated by the parties as part of the Settlement Agreement, for Plaintiffs' counsel to conduct confirmatory discovery to ensure that the decision to settle the case on the terms negotiated was not based on information that was materially inaccurate. Plaintiffs and Class Counsel believe that the terms set forth in the Settlement Agreement are fair, reasonable, adequate and in the best interests of the Settlement Class. Thus, Plaintiffs petition the Court for an Order:

(1) consolidating the Actions;

(2) conditionally certifying the Settlement Class as a non-opt out class and appointing Class Counsel;

(3) preliminarily approving the Settlement;

(4) directing notice to the Settlement Class Members and approving the plan and form of notice;

(5) appointing KCC Class Action Services LLC as Settlement Administrator and directing it to implement the plan of notice to the Settlement Class in the form approved by the Court;

(6) scheduling a Final Approval Hearing at which time Settlement Class Members who have given notice of their intent to appear may be heard ("Fairness Hearing"); and

(7) scheduling a hearing on Named Plaintiffs' impending application for fees and costs.

In support of this Motion, Plaintiffs submit the following documents:

- Settlement Agreement executed by the parties, attached hereto as Exhibit 1, including as exhibits a proposed Preliminary Approval Order, proposed Notice, and proposed Judgment;

- Declaration of Gregory Y. Porter ("Porter Decl."), one of Plaintiffs' counsel;

- Proposed Order Consolidating the Actions; Conditionally Certifying the Settlement Class as a Non-Opt-Out Class; Granting Preliminary Approval of the Action Settlement; Directing Notice to Settlement Class Members and approving the Plan and Form of Notice; Appointing KCC Class Actions Services LLC as Settlement Administrator;

3

Scheduling a Fairness Hearing; and Scheduling a Hearing on Plaintiff's Impending Motion for Fees and Costs and the Payment of Service Awards to the Named Plaintiffs.

## I.  SUMMARY OF CLAIMS AND DEFENSES

### A.  Claims

Named Plaintiffs, individually and as representatives of a putative class, brought the Actions in their capacities as participants in, and on behalf of, the FMR LLC Profit Sharing Plan ("Plan") against Defendants. The Actions allege that Defendants engaged in self-dealing at the expense of their employees' retirement savings in violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104, 1106, as futher described below.

FMR is the parent of a number of financial services companies doing business as Fidelity Investments (collectively, "Fidelity"), serving more than 20 million individual and institutional clients as well as 5,000-plus intermediary financial services firms. FMR is the Plan sponsor and a party in interest to the Plan under 29 U.S.C. § 1002(14). Fidelity provides trustee, record-keeping, and administrative services to the Plan. Plaintiffs allege that FMR is a fiduciary to the Plan under 29 U.S.C. § 1002(21) based on the allegations that it: (1) exercises discretionary authority or discretionary control respecting management of the Plan; (2) exercises authority or control respecting management or disposition of the Plan's assets; (3) possesses discretionary authority or discretionary responsibility in the administration of the Plan; and (4) appoints, monitors, and removes Committee Members.

Plaintiffs allege that Committee Members are or were responsible for selecting, evaluating, monitoring, and maintaining the Plan's investment options and its service-providers. Plaintiffs allege that certain Committee Members are fiduciaries of the Plan under 29 U.S.C. § 1002(21) based on the allegations that they: (1) exercise discretionary authority or discretionary control respecting management of the Plan; (2) exercise authority or control respecting management or disposition of

4

the Plan's assets; or (3) have discretionary authority or discretionary responsibility in the administration of the Plan.

ERISA requires that plan fiduciaries act solely in the interest of Plan participants when making decisions with respect to selecting, removing, replacing, and monitoring the Plan's investments. Plaintiffs allege that Defendants are plan fiduciaries and failed to fulfill these fiduciary duties by offering investment options that were not in the best interests of Plan participants and that benefitted FMR, and by failing to obtain favorable revenue-sharing rebate arrangements.

Based upon these allegations, Plaintiffs brought claims against Defendants for breaches of their duties of loyalty in violation of § 404(a)(1)(A) of ERISA, and engaging in prohibited transactions in violation of § 406 of ERISA. The Complaints seek restoration of Plan losses, disgorgement of fees, and removal of Fidelity funds from the Plan.

## B.   Defenses

Defendants have asserted, or would assert should the litigation continue, a number of defenses to Plaintiffs' claims. The Defendants deny the allegations made in both cases. Defendants maintain that their decision to offer a broad array of FMR mutual funds to Plan participants was not self-interested but, rather, was in the best interests of the Plan. Among the defenses that Defendants would have asserted are the following: Defendants believed that FMR provided an extensive platform of high quality mutual funds with an appropriate investment mix for its current and former employees; FMR offered a broad array of mutual funds to Plan participants, including funds in many different asset classes and with a wide variety of risk profiles and a range of fee structures; participants could select among these diverse options themselves, or to have an expert select and manage their investments for them, free of charge; and the investment objectives, risks and costs of those investments were fully disclosed in writing to all participants before they made any investment decisions. Defendants have already asserted a number of other defenses in the litigation that they

5

would maintain should the case proceed: Fidelity contributed over $2.5 billion of its own money to Plan participants' accounts between 2007 and 2012; the Department of Labor expressly allows financial service providers who sponsor 401(k) plans to offer their own products to plan participants; the claims are time-barred under ERISA's statutes of limitations and repose; and certain claims are barred by the constitutional standing doctrine.

## III.   LITIGATION HISTORY AND SETTLEMENT NEGOTIATIONS

Before filing the Bilewicz and Yeaw Complaints, Plaintiffs' counsel undertook extensive investigations to support the allegations and claims in the Complaints. Among other things, Plaintiffs' counsel, working with consultants, examined and evaluated: plan studies and surveys about the concentration of investment offerings with a single provider (Bilewicz Compl. ¶¶ 51-65); the inception dates of mutual funds as compared to the date such funds were added to the Plan (*id.* ¶¶ 66-96); the fees of actively-managed target date funds as compared to indexed target-date funds (*id.* ¶¶ 97-106); and the structure, investment offerings, and fees of very large plans (*id.* ¶¶ 107-119). In preparing the Complaints, Plaintiffs' counsel also reviewed Plan documents, summary plan descriptions, investment brochures, mutual fund prospectuses, mutual fund statements of additional information, mutual fund annual reports, financial statements and accountants reports for the Plan for the years 2005-2012. Plaintiffs' counsel also interviewed each of the twenty-nine named plaintiffs in the Actions.

Plaintiff Bilewicz filed the initial complaint in the Bilewicz Action on March 19, 2013. (Dkt. 1). On June 3, 2013, Defendants filed a Motion to Dismiss (Dkt. 23) and a supporting Memorandum asserting several grounds for dismissal of the complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Plaintiff Bilewicz moved on September 3, 2013 to amend the Complaint to add additional plaintiffs and attached a proposed First Amended Class Action Complaint (the "Amended Complaint"). (Dkt. 32). On October 1, 2013, Defendants filed a Motion to Dismiss the Amended

ACTIVE/73932530.3

Complaint (Dkt. 38), arguing that: (1) Plaintiffs' claims are time-barred under ERISA's statutes of limitations and repose; (2) the Amended Complaint fails to state for breach of fiduciary duties; (3) the Amended Complaint fails to state a claim for prohibited transactions; (4) the Amended Complaint fails to adequately plead fiduciary status of FMR; and (5) Plaintiffs lack standing to assert their claims. On October 29, 2013, Plaintiffs filed a Memorandum in Opposition to the Motion to Dismiss. (Dkt. 41). Defendants replied on November 26, 2013. (Dkt. 43). The Court granted leave to amend on February 4, 2014, and Plaintiffs filed the Amended Complaint the same day. (Dkt. 46). Defendants' Motion to Dismiss addressed to the Amended Complaint remains pending.

The Yeaw Plaintiffs filed the Yeaw Complaint on January 7, 2014. Shortly thereafter, Plaintiffs and FMR informed the Court that they were entering mediation and there have been no further filings by the parties or actions by the Court in the matter.

On January 10, 2014, Plaintiffs and FMR participated in a mediation with the Honorable Daniel Weinstein (retired) in San Francisco. Although Plaintiffs and FMR were not able to reach agreement on that day, they continued to work with Judge Weinstein to attempt to settle the lawsuit. After multiple communications with the parties, Plaintiffs and FMR each accepted the key terms of an agreement, and then negotiated a memorandum of understanding to embody those terms. The memorandum of understanding was heavily negotiated by the parties over several weeks. Plaintiffs and FMR reached final agreement on the memorandum of understanding on April 23, 2014, and informed the Court of their agreement on April 24, 1014.

Thereafter, Plaintiffs and FMR prepared and executed the Settlement Agreement presented to the Court on this motion, memorializing the terms of the Settlement for which Plaintiffs now seek preliminary approval. *See* Settlement Agreement, attached as Exhibit 1. The terms of the Settlement Agreement were the result of extensive, vigorous, and protracted negotiation, before, during and after the mediation.

7

## IV.    TERMS OF THE SETTLEMENT AGREEMENT

The material terms of the parties' Settlement Agreement are as follows:

### A.    Benefits to the Class

FMR agrees to make a monetary payment of $12 million ("Settlement Amount" or "Settlement Fund"). Settlement Agreement, ¶ 7.1. In addition to the monetary payment, the relief provided in the Settlement includes substantial affirmative relief. Fidelity will be implementing the following changes to the Plan, and has agreed that such changes will be in effect for at least two years following the effective date of the amendment, unless otherwise noted:

- The Plan will make available a wide selection of both Fidelity and non-Fidelity mutual funds.

- The Plan will also continue to offer: (i) the Fidelity Freedom Funds – Class K as the Plan's qualified default investment alternative; and (ii) Fidelity's portfolio advisory service, Portfolio Advisory Services at Work (PAS-W). PAS-W will continue to be offered at no cost to participants.

- Fidelity is increasing auto-enrollment for eligible employees from 3% to 7% of eligible compensation, and will default current participants who are currently deferring below 7% to 7% of eligible compensation. Fidelity will apply its match to those increased contributions.

- The Plan shall provide that revenue sharing attributable to non-Fidelity mutual funds shall be credited to participants in the same way as revenue attributable to Fidelity mutual funds and collective trusts pursuant to the 8th amendment to the 2005 restatement of the Plan is credited to participants. This revision to the Plan shall remain in effect for at least three years.

Settlement Agreement, ¶ 7.3.

The plan changes that Fidelity will make as part of this settlement have significant value to Fidelity employees.

In addition, FMR may select an independent fiduciary to provide such authorization as may be required by Prohibited Transaction Exemption 2003-39. Settlement Agreement at, ¶ 2.4.1. All costs reasonably borne by the independent fiduciary, including the reasonable fees of the independent fiduciary for its service up to $50,000, shall be borne by the Settlement Fund. *Id.*

ACTIVE/73932530.3

After payment of all fees, costs, expenses and incentive payments discussed below, the remaining settlement amount ("Net Settlement Fund") shall be allocated among the Settlement Class Members on a pro rata basis predicated upon their Average Plan Account Balances subject to the Plan of Allocation described in Section 9 and Appendix A of the Settlement Agreement. Settlement Agreement, ¶ 9.2. As set forth in the Settlement Agreement, the Net Settlement Fund shall be distributed to the Settlement Class Members as follows:

(1)     Settlement Class Members who no longer have a positive balance in their Plan account as of the Distribution Date will receive a check from the Settlement Administrator.

(2)     Within thirty (30) days after the Settlement Effective Date, Fidelity shall pay into the escrow account an additional amount sufficient to allow the Settlement Administrator to pay Settlement Class Members who ceased having a positive balance in their Plan account after the date of the Plan status report produced to the Settlement Administrator. In no event, however, shall Fidelity's aggregate monetary payment under this settlement exceed $12 million.

(3)     All other Settlement Class Members, *i.e.*, Settlement Class Members who have a Plan account with a positive balance as of the Distribution Date, will receive settlement proceeds into their Plan account. To the extent feasible and ascertainable, those settlement proceeds will be invested based on the participant's election mix for new contributions or, if no such election is in effect, to the applicable qualified default investment option.

(4)     No payment made in subsection (1) (2) and (3) above shall be lower than $10 per Settlement Class Member; any Settlement Class Member whose entitlement to payment based on their Average Plan Account Balance during the Allocation Period would otherwise be below $10 will receive a payment of $10.

(5)     Any Settlement Class Member who did not have any balance in his or her Plan account prior to January 1, 2014 shall receive a distribution of $10, which the parties agree is a reasonable amount for such Settlement Class Members.

(6)     All Settlement Class Members shall be entitled to participate in the Plan of Allocation.

Settlement Agreement, ¶¶ 9.21 – 9.25.

**B.      Service Award to Named Plaintiffs and Attorneys' Fees and Costs**

Subject to Court approval, Class Counsel fees, costs and expenses, and service payments to Plaintiffs shall be paid from the Settlement Fund prior to distribution of the Settlement Fund to the Settlement Class. Settlement Agreement, ¶¶ 8, 9.1. The Named Plaintiffs shall petition the Court for an award not to exceed $5,000 each in recognition of their service as class representatives. Settlement Agreement, ¶ 11.2. Named Plaintiffs shall also be entitled to further distribution under this settlement as a Settlement Class Member. *Id.* Class Counsel may petition the Court for an award of attorney's fees and costs. Settlement Agreement, ¶ 11.1. FMR agrees that it will not object either to the requests of Named Plaintiffs for a service award nor to the request of Class Counsel's attorneys' fees and costs. Settlement Agreement, ¶ 11.3. All requests shall be subject to Court approval. Settlement Agreement, ¶¶ 11.1, 11.2.

### C.    Release of Claims

Plaintiffs and the Settlement Class will provide a release to Defendants and the other Released Parties pursuant to Section 3 of the Settlement Agreement, and covenants not to sue relating to any claims arising out of or relating in any way to the subject matter of the Actions or the new Plan lineup pursuant to Section 4.6 of the Settlement Agreement. Settlement Agreement, ¶¶ 3.1, 3.3, 4.6.1, 4.6. The release and covenant not to sue will include direct and derivative claims, claims on behalf of any class, claims under ERISA, common law and any other statute, and shall extend to all Defendants, including FMR, and all of FMR's direct or indirect subsidiaries, affiliates, and any person or entity that is under the common control of FMR or its direct or indirect subsidiaries and affilaites, including without limitation FMR past and present affiliates, committees, officers, directors and employees. *Id.* Class Counsel will release all claims for fees and costs not otherwise awarded. Settlement Agreement, ¶ 3.5. These actions and all Released Claims will be dismissed with prejudice and all parties will bear costs not otherwise awarded. *Id.* Plaintiffs' and the Settlement Class's release

ACTIVE/73932530.3

in this regard shall specifically exclude any and all claims alleged in the separately filed action

captioned *In re Fidelity ERISA Float Litigation.* Settlement Agreement, ¶ 3.4.

> ### D.     Confirmatory Discovery

The Settlement Agreement provides that the parties shall cooperate in affording Class

Counsel an opportunity for reasonable confirmatory discovery under a mutually agreeable protective

order that the Settling Parties will separately present to the Court. Such confirmatiory discovery may

include documentary and/or data discovery and/or an interview or interviews of one or more

witnesses that FMR reasonably identifies for such purpose. Settlement Agreement, ¶ 2.5.

> ### E.     Notice and Proposed Schedule of Events

The Settlement Agreement provides that subject to a mutually agreed upon protective order

for the protection of privacy, FMR shall provide the Settlement Administrator with the names and

last known addresses of Settlement Class Members for the purpose of providing notice of the

proposed settlement to Settlement Class Members. Settlement Agreement, ¶ 4.2.

The proposed Class Notice, Exhibit A-1 to the Settlement Agreement, provides all the

information necessary to inform Settlement Class Members about the nature of the Actions, the

terms of the Settlement, including both monetary and prospective relief, and the procedures for

entering an appearance to be heard or to object to the Settlement. In addition, Class Counsel will

make available to Settlement Class Members key court documents, including Plaintiffs' Motion for

Award of Attorneys' Fees, via the website www.fidelity401klawsuit.com. The Class Notice will be

mailed by U.S. mail, first class. Class Counsel anticipate that Settlement Class Member mailing

information supplied by FMR will be very accurate for two reasons. First, many Settlement Class

Members are current employees of Fidelity for which FMR almost certainly has valid addresses. The

same will be true of many former employees who are Settlement Class Members. For undelivered or

returned mail to Settlement Class Members, the Settlement Administrator will engage in various, standardized processes to identify and locate Settlement Class Members.

Plaintiffs and FMR agree to the following schedule of events subject to the Court's approval:

| Event | Timing |
|---|---|
| Preliminary Approval Hearing | TBD |
| Date by which FMR will provide Settlement Administrator with class list and Class contact information | Three days after Preliminary Approval Order |
| Last Day to Mail Settlement Notice | Ten days after Preliminary Approval Order |
| Deadline for Plaintiffs to File Motion for final approval of the Settlement, award of attorneys' fees and expenses, and for Service Awards for Named Plaintiffs | Thirty days after Preliminary Approval Order |
| Last Day for Settlement Class Members to File Objections to the Settlement and notice of intention to appear at Fairness Hearing | Fifty-five days after Preliminary Approval Order |
| Response to Objections | Seventy days after Preliminary Approval Order |
| Fairness Hearing | Ninety days after Preliminary Approval Order |

## V.     ARGUMENT

### A.     The Court should certify the Settlement Class because the requirements of Rules 23(a), 23(b)(1), and 23(g) of the Federal Rules of Civil Procedure are satisfied.

In connection with preliminary approval of the settlement, Plaintiffs seek class certification for settlement purposes. As part of the settlement, Plaintiffs propose, and solely for purposes of agreeing to settle the claims and without waiving any defenses to class certification should the settlement not be approved, FMR does not object to, certification of the Settlement Class defined as follows as a non-opt-out class:

all persons who participated in the Plan during the Settlement Class Period (March 20, 2007 through either (i) the date of the Settlement Agreement or (ii) in the event that the Preliminary Approval Order is not entered before July 28, 2014, then July 28, 2014), except for Committee Members. A person has "participated" in the Plan for

this purpose if he or she had a positive balance at any time in the Plan during the Settlement Class Period.

Certification of a class action is governed by Rule 23, Fed. R. Civ. P. Rule 23(a) provides that a class action may be maintained if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a), Fed. R. Civ. P. Moreover, a class action must satisfy at least one of the requirements set forth in Rule 23(b)(1), (2) or (3). Here, Plaintiffs seek certification of the Settlement Class under Rule 23(b)(1).

### 1.       The Settlement Class satisifies the requirements of Rule 23(a).

#### a)       The Settlement Class is so numerous that joinder is impracticable.

The Settlement Class satisfies the numerosity requirement because it is composed of thousands of persons, in numerous locations. According to the Plan's annual financial statements, at any given time during the Settlement Class Period, the Plan has had more than 50,000 participants and beneficiaries, all of whom invested in at least one of the Fidelity funds during the Settlement Class Period. The number of Settlement Class Members is so large that joinder of all its members is impracticable and thus, the numerosity element easily satisfied. Although no specific threshold exists, a class size of forty or more will generally suffice in the First Circuit. *Reid v. Donelan*, No. 13-cv-30125-MAP, 2014 WL 545144, *2 (D. Mass., Feb. 10, 2014) (citing *George v. Nat'l. Water Main Cleaning Co.,* 286 F.R.D. 168, 173 (D. Mass. 2012)). Moreover, courts have held that a lesser showing of numerosity may be required when the defendants' alleged conduct uniformly affects the entire class. *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983) (adding that, in close situations, the balance should be struck in favor of finding the numerosity requirement satisfied). Here, Defendants' alleged conduct affects the entire class on a uniform basis.

13

> **b)** **There are questions of law and fact common to the Settlement Class.**

Rule 23(a)(2), Fed. R. Civ. P., "does not require that *every* question be common" among the proposed class. *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 259 (D. Mass. 2005) (citing *In re PolyMedica Sec. Litig.,* 224 F.R.D. 27, 35 (D. Mass 2004) (emphasis in original)). *See also Guckenberger v. Boston Univ.,* 957 F.Supp. 306, 325 (D. Mass. 1997) (noting that the "commonality" and "typicality" requirements of Rule 23(a) "do not require that all of the putative class members share identical claims; rather, these prerequisites mandate only that complainants' claims be common, and not in conflict.") (internal quotations and citations omitted from original)). Because "[a] *single* common legal or factual issue can suffice" to satisfy the 23(a)(2) requirement, "the commonality requirement ordinarily is easily met." *Swack,* 230 F.R.D. at 259 (citing *Payne v. Goodyear Tire & Rubber Co.,* 216 F.R.D. 21, 24 (D. Mass 2003)) (emphasis in original) (internal citations omitted in original).

Here, there are numerous questions of law and fact common to the Settlement Class including, but not limited to:

a. Whether Defendants caused the Plan to offer, or failed to monitor or remove, investment options established or managed by FMR and/or its subsidiaries and affiliates;

b. Whether Defendants were fiduciaries responsible for monitoring and making decisions with respect to the investments in the Plan;

c. Whether Defendants breached their fiduciary duties to the Plan by causing the Plan to invest its assets in certain investment options offered or managed by FMR or its subsidiaries and affiliates, or failing to monitor or remove such options;

d. Whether the investment decisions made by Defendants were solely in the interests of Plan participants and beneficiaries of the Plan;

e. Whether the Plan suffered losses as a result of Defendants' fiduciary breaches;

f. Whether the Plan mandated investments in Fidelity mutual funds and whether such a mandate is void under ERISA;

g. Whether a Plan mandate to invest in Fidelity mutual funds confers a presumption of prudence on Defendants' selection of Fidelity mutual funds;

h.   Whether Defendants should have sought rebates to the Plan prior to 2012.

Each of these questions are not only common to the Settlement Class, but will generate common answers apt to drive the a resolution of the litigation.   *Wal-Mart Stores, Inc. v. Dukes* (2011) 131 S.Ct. 2541, 2551. As such, Plaintiffs' allegations clearly meet the Rule 23(a)(2) standard for commonality.

### c)   Named Plaintiffs' claims are typical of the claims of the Settlement Class.

The typicality requirement of Rule 23(a)(3) is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 291 (2d Cir. 1992). Where "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented," typicality is satisfied "irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). "The typicality requirement is often met in putative class actions brought for beaches of fiduciary duty under ERISA." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 143 (S.D.N.Y. 2010).

All of the Named Plaintiffs invested part of their retirement savings in the Plan. Thus, Defendants' alleged misconduct harmed all Settlement Class Members in the same way, in that the Complaints allege that the Plan and class members lost millions of dollars in the form of higher fees and lower returns on their investments than they would have otherwise experienced. Thus, Named Plaintiffs' claims arise from the same course of conduct that gave rise to the claims of other Settlement Class Members.

### d)   Named Plaintiffs will fairly and adequately represent the Settlement Class.

"The adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a), which 'serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so

15

interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n. 20 (1997) (citing *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 157 n. 13 (1982)). The requirement encompasses two separate inquiries: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1190 (11th Cir. 2003) (internal citations omitted). Moreover, "[o]nly conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012).

Named Plaintiffs, consisting of both current and former participants in the Plan, have no interests that are antagonistic to the interests of any of the members of the Settlement Class. Current participants share a common goal: participating in a well-run retirement plan that provides an array of prudent investment options at a reasonable cost. The prospective relief has significant value to Fidelity employees. Former particpants, of course, have a more compelling interest in monetary relief. Here, all Settlement Class Members will benefit from the substantial monetary relief obtained in the Actions. In sum, Named Plaintiffs stand in the same shoes as the other members of the Settlement Class with the same incentives to purusue and consummate a fair and reasonable settlement.

### 2. The Class satisifies the requirements of Rule 23(b)(1).

Rule 23(b)(1)(B) provides that a class may be certified if the Rule 23(a) prerequisites are met and "prosecuting separate actions by or against individual class members would create a risk of . . . adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." "[T]he Advisory Committee

ACTIVE/73932530.3

Notes to the 1966 Amendment of Rule 23(b)(1)(B) specifically state that certification is especially appropriate in cases charging breach of trust by a fiduciary to a large class of beneficiaries." *In re Marsh ERISA Litig.*, 265 F.R.D. at 142.

Courts routinely certify class actions alleging breach of ERISA fiduciary duties pursuant to Rule 23(b)(1). *See, e.g., In re Beacon Assocs. Litig.* 282 F.R.D. 315, 341-42 (S.D.N.Y. 2012) (*quoting In re AOL Time Warner ERISA Litig.*, No. 02 Civ. 8853 (SWK), 2006 WL 278962, at *4 (S.D.N.Y. Sept. 27, 2006)); *In re Marsh ERISA Litig.*, 265 F.R.D. at 142-44 (certifying class of participants and beneficiaries of ERISA plan under Rule 23(b)(1)); *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 74-77 (S.D.N.Y. 2006) (same); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004) (same); *Banyai v. Mazur*, 205 F.R.D. 160, 165 (S.D.N.Y. 2002) (same); *Gruby v. Brady*, 838 F. Supp. 820, 828 (S.D.N.Y. 1993) (same). *See generally In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585 (3d Cir. 2009) ("breach of fiduciary claims brought under 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held").

As ERISA breach of fiduciary duty actions, these Actions are typical 23(b)(1) class actions. Prosecution of separate actions by individual members would create the risk of: (a) inconsistent or varying adjudications with respect to individual members of the Settlement Class that would establish incompatible standards of conduct for the defendants opposing the Settlement Class; or (b) adjudications with respect to individual members of the Settlement Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests. This is especially true because the Actions seek, and the Settlement provides for, prospective non-monetary relief involving the manner in which the Plan is structured that will provide meaningful value to Plan participants. It would be wholly impractical, if not potentially unlawful, for Fidelity to adopt different Plan terms for different employees depending on the outcome of individual actions.

ACTIVE/73932530.3

Thus, a classwide settlement is the superior method for the fair and efficient resolution of this controversy. Joinder of all Members of the Settlement Class is impracticable. The losses suffered by some of the individual Members of the Settlement Class may be small, and it would therefore be impracticable for individual members to bear the expense and burden of individual litigation to enforce their rights. Moreover, Defendants, as alleged fiduciaries of the Plan, were obligated to treat all Settlement Class Members similarly as Plan participants pursuant to written plan documents and ERISA, which impose uniform standards of conduct on fiduciaries. Individual proceedings, therefore, would pose the risk of inconsistent adjudications. Given the nature of these allegations, no Settlement Class Member has an interest in individually controlling the prosecution of the Actions, and Plaintiffs are aware of no difficulties likely to be encountered in the management of the Actions as class actions.

### 3.     The Court should appoint Plaintiffs' Counsel as Class Counsel.

Fed. R. Civ. P. 23(g) requires a court to appoint class counsel. In appointing class counsel, the Court "must" consider:

> (i)     the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii)   counsel's knowledge of the applicable law; and
>
> (iv)    the resources that counsel will commit to representing the class

Fed. R. Civ. P. 23(g)(1)(A). The court "may" also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

All these factors support appointment of Plaintiffs' counsel as Class Counsel in these Actions. Plaintiffs' counsel workled closely with consultants to investigate the claims, performed numerous analyses of complex financial and investment data, and reviewed thousands of pages of

Plan documents, financial statements, prospectuses, studies, surveys, and other information and data

to prepare the Complaints. As the detailed and substantive allegations in the Complaints reflect, the

Complaints are the product of hundreds of hours of extensive and careful research and analysis. A

detailed recitation of the work performed in the Actions is set forth in Paragraphs 5 through 11 of

the Declaration of Gregory Y. Porter.

Plaintiffs' counsel has substantial experienience with ERISA litigation, including class action

litigation. At Bailey & Glasser, the primary ERISA attorney Gregory Porter has represented both

plaintiffs and defendants in ERISA class actions, including as lead counsel in the recent District of

Massachusetts action *Glass Dimensions, Inc. ex rel. Glass Dimensions, Inc. Profit Sharing Plan & Trust v.*

*State Street Bank & Trust Co.*, Civ. Action No. 10-10588-FDS. John Roddy, one of the firm's Boston

partners, has also seved as lead counsel in numerous class actions, including in the District of

Massachusetts. A fuller description of Bailey & Glasser's experience litigating complex class actions,

including a firm resume and Mr. Porter's individual resume, is attached as Exhibit A to the Porter

Declaration.

Levin Papantonio has extensive experience in complex and class litigation.  Levin

Papantonio attorneys have served as lead counsel, co-lead counsel, or in leadership roles on

numerous class actions, MDLs, and mass actions.  Peter Mougey has represented clients in hundreds

of complex financial services matters, leads the firm's Securities and Business Torts practice and is

currently counsel in several pending ERISA class actions.  A fuller description of Levin Papantonio's

experience, including a firm resume and resumes of individual attorneys, is attached as Exhibit B to

the Declaration of Gregory Y. Porter.

Peiffer Rosca Abdullah Carr & Kane, LLC ("Peiffer Rosca") was founded in 2013 by Joe

Peiffer, who previously was a litigation partner at Fishman Haygood, LLP, in New Orleans.  Peiffer

Rosca handles a wide variety of cases from its offices in New Orleans, Cleveland, and Rochester, but

its class action practice is focused on representing individuals and institutions that have suffered

losses due to financial fraud or breaches of fiduciary responsibility. Peiffer Rosca currently serves as

counsel for plaintiffs in numerous class actions, as set forth on Exhibit C. to the Porter Declaration.

Peiffer Rosca's class action practice is headed by Joe Peiffer, who has litigated complex cases

successfully around the country, in both trial and appellate courts and arbitral forums. Joe was one

of three Louisiana lawyers ranked by Chambers USA for securities litigation in 2011 and has been

named a 2013 Rising Star by his peers in the Class Action Administration organization. He has also

successfully risen into the leadership of several national bar associations. He twice served as the

chairman of the Business Torts Section of the American Association for Justice. He was recently

elected Executive Vice President of PIABA– a nationwide bar association of lawyers that represent

individuals and institutions in arbitrations against investment banks and brokerage firms – and will

become PIABA President in October, 2014.

Schneider Wallace has served as class counsel in numerous ERISA class action matters,

including the *Glass Dimensions* matter in this district, which was settled following orders certifying the

class and denying defendants' motion for summary judgment. Partner Todd Schneider heads the

firm's class action practice, and has litigated class actions successfully in both trial and appellate

courts, and argued before the Supreme Court. Partner Garrett Wotkyns has represented plaintiffs

and defendants in complex financial services matters, including in the *Glass Dimensions* matter, and

servies on committees with the American Association for Justice and Practicing Law Institute,

among other organizations. A fuller description of Schneider Wallace's experience, and the

individual resumes of the attorneys overseeing the Actions, are attached as Exhibit D to the Porter

Declaration.

**B.    The Court should grant preliminary approval of the Settlement because it is fair, adequate and within the range of possible approval.**

**1.    The standards for preliminary approval.**

ACTIVE/73932530.3

Federal Rule of Civil Procedure 23(e) provides that a class action cannot be settled or compromised without approval by the court. Judicial approval is required regardless of whether the action is certified for trial and later settled or is certified for purposes of settlement. Manual for Complex Litigation (Fourth) § 21.61 (2004). The approval process typically involves two steps: first, the settlement is approved preliminarily following the submission of the parties of relevant information concerning the terms of the settlement and the history of the litigation; second, after notice of the proposed settlement is given to the class, the Court conducts a final approval hearing, also known as a fairness hearing. *Hochstadt v. Bos. Scientific Corp.*, 708 F. Supp. 2d 95, 97 (D. Mass. 2010) (citing Manual for Complex Litigation (Fourth) § 13.14 (2004)). Ultimately, to approve the proposed settlement the Court must determine that it is fair, reasonable and adequate. *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996).

"At the preliminary approval stage, the Court need not make a final determination regarding the fairness, reasonableness and adequateness of a proposed settlement; rather, the Court need only determine whether it falls within the range of possible approval." *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 140 (D.P.R. 2010) (citing *Scott v. First Am. Title Ins. Co.*, No. 06–286, 2008 WL 4820498, at *3 (D.N.H. Nov. 5, 2008)); *In Re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534–35 (3d Cir. 2004); *Colella v. Univ. of Pittsburgh*, 569 F. Supp. 2d 525, 527 (W.D. Pa. 2008). "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *see also Young v. Polo Retail, LLC*, C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006); *In re Vitamins Antitrust Litig.*, MISC. 99-197 (TFH), 2001 WL 856292, at *4-5 (D.D.C. Jul. 25, 2001); 4 Alba Conte, Herbert B. Newberg, Newberg on Class Actions, §11.25, p. 38 (4th ed. 2002).

ACTIVE/73932530.3

The Court's analysis should begin with the presumption that the settlement is fair. *See, e.g., City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996); *Duhaime v. John Hancock Mut. Life. Ins. Co.*, 177 F.R.D. 54, 68 (D. Mass. 1997); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 176 F.R.D. 158, 184 (E.D. Pa. 1997). Thus, at this stage, so long as the settlement falls into the range of possible approval — giving deference to the result of the parties' arms'-length negotiations and the judgment of experienced counsel following sufficient investigation and discovery — the settlement should be preliminarily approved and a final fairness hearing scheduled.

Factors courts consider when examining the fairness, adequacy, and reasonableness of a class settlement include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116–17 (2d Cir. 2005); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, MDL 1532, 2011 WL 1398485 (D. Me. Apr. 13, 2011), *supplemented*, 800 F. Supp. 2d 328 (D. Me. 2011) and *aff'd*, 2:03-MD-1532-DBH, 2012 WL 379947 (D. Me. Feb. 3, 2012).

"Preliminary approval of a class action settlement requires the Court to consider whether '(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *Gerardo v. Quong Hop & Co.*, No. C 08-3953 JF (PVT), 2009 WL 1974483, at *2 (N.D. Cal. July 7, 2009) (granting provisional approval of class certification and preliminary approval of settlement of FLSA claims). "Because class members will subsequently receive notice and have an

opportunity to be heard on the settlement, this Court need not review the settlement in detail at this juncture; instead, preliminary approval is appropriate so long as the proposed settlement falls within the range of possible judicial approval." *In re M.L. Stern Overtime Litig.*, No. 07-CV-0118, 2009 WL 995864, at *3 (S.D. Cal. Apr. 13, 2009) (citation and internal quotation omitted).

> **2.     The proposed settlement is fair and within the range of possible approval.**

>> **a.     The Settlement is the result of serious, arm's-length and informed negotiations.**

An indication of whether a settlement is fair and reasonable is whether it is the product of serious, arm's length negotiations coupled with extensive analysis and investigation. Extensive negotiations and investigations minimize concerns that the Settlement Agreement might be the result of collusion among opposing parties or their counsel to undermine the interests of the class for their own benefit.

The settlement in the Actions was only achieved through extensive, arm's length settlement negotiations under the guidance of the Honorable Daniel Weinstein (Ret). Judge Weintstein has extensive experience mediating complex class actions. Porter Decl. ¶¶ 13 - 15. Following the one-day, in-person mediation, Judge Weinstein continued to communicate with the parties on a regular basis to achieve a settlement. He ultimately assisted the parties in addressing several key terms, to which the parties agreed on February 9, 2014. Following that, the parties continued to engage in extensive negotiations over other key terms. After several weeks of negotiations, the parties ultimately reached agreement and executed a memorandum of understanding summarizing the key terms on April 23, 2014.

The Complaints in the Actions were the product of hundreds of hours of extensive and careful research and analysis. Plaintiffs' counsel worlked closely with consultants to investigate the claims, performed numerous analyses of complex financial and investment data, and reviewed

ACTIVE/73932530.3

thousands of pages of Plan documents, financial statements, prospectuses, studies, surveys, and other information and data to prepare the Complaints. Plaintiffs' counsel also interviewed each of the twenty-nine named plaintiffs in the Bilewicz and Yeaw actions. Further, briefing on Defendants' motion to dismiss required the parties to undertake extensive research and analysis into Defendants' legal defenses. Porter Decl. 12. Finally, the parties prepared detailed, substantive mediation briefs before mediation, which addressed, in addition to the issues raised in Defendants' motion to dismiss, more key issues related to Plaintiffs' claims and and Defendants' defenses. *Id.* 13. The parties' respective positions and arguments were also subjected to vigorous questioning and analysis by the mediator, Judge Weinstein. *Id.*. Finally, the parties have agreed to confirmatory discovery on key claims and defenses, which may include interviews of key witnesses. In sum, although there has been no formal discovery to date, Plaintiffs' intense and detailed pre-complaint investigation, the parties briefing on the motion to dismiss, the mediation briefing and presentations, coupled with the confirmatory discovery support a finding that the settlement will have been reached through robust investigation tanatamount to extensive discovery. *Cf. In re Puerto Rican Cabotage Antitrust Litig.*, 815 F.Supp.2d 448, 473-74 (D.P.R. 2011) (although formal discovery had not commenced, class counsel's substantial investigation and informal discovery permitted court to conclude the parties had sufficient information to make an informed decision about the settlement); *Rossi v. P&G*, 2012 U.S. Dist. LEXIS 143180, 20-21 (D.N.J. 2013) (although case was early in discovery, class counsel's substantial pre-suit investigation contributed to finding that parties had conducted sufficiently thorough investigation of the facts supporting settlement).

Moreover, the Plaintiffs only seek preliminary approval at this juncture. After confirmatory discovery is completed, Plaintiffs' Counsel will report their findings to the Court with their motion for final approval of the Settlement to confirm that the material premises on which the settlement was based were, in fact, real.

ACTIVE/73932530.3

Finally, as detailed in Exhibits A through D to the Declaration of Gregory Y. Porter, Plaintiffs' counsel are experienced in complex class actions, including ERISA class actions involving 401(k) plans.

> **b.    The relief obtained by the Settlement Agreement and the allocation of monetary compensation to the class is fair and reasonable.**

Significantly, the Settlement Agreement offers cash compensation in the aggregate amount of $12 million, with the net amount (after payment of such attorney's fees and costs, including notice and related costs, and such Plaintiff's service award as may be allowed by the Court) guaranteed to be paid to Settlement Class Members. There will be no claims process and therefore no reversion of any part of the Settlement funds to Defendants based upon the failure to make a claim.

Under the Plan of Allocation proposed by Class Counsel, each Settlement Class Member will be paid in proportion to the average account balance he or she held in the Plan, with a minimum distribution of $10 to every Settlement Class Member. Further, the Plan changes that Fidelity will make as part of this settlement have significant value to Fidelity employees, as detailed above.

It is well settled that a proposed settlement is not to be measured against a hypothetical ideal result that might have been achieved. *See, e.g., Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("This court has aptly held that it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators."); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("The trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in

compromise is a yielding of absolutes and an abandoning of highest hopes.'") (quoting *Milstein v. Werner*, 57 F.R.D. 515, 524-25 (S.D.N.Y. 1972).

A class settlement need not recover the maximum damages that would be provable after establishing liability at trial, and the recovery of a fraction of that amount is reasonable particularly in a complex and risky case such as the one at bar. Indeed, even recoveries representing a very small percentage of the defendant's maximum exposure may be found to be fair, adequate and reasonable. *See, e.g.*, *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla.1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *Newbridge Networks Sec. Litig.*, No. 94-1678, 1998 WL 765724, at *2 (Oct. 23, 1998) ("an agreement that secures roughly six to twelve percent of a potential recovery . . . seems to be within the targeted range of reasonableness"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses"); *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 581 (E.D. Pa. 2003).

Under the circumstances presented in the Actions, where the proposed Settlement Class faces numerous opportunities for defeat, including dismissal, denial of class certification, summary judgment, trial, and appeal, not to mention the years of delay should these Actions proceed through an appeal, the Settlement Agreement for which the parties seek this Court's approval represents the best realistic recovery for all members of the Settlement Class, and it is well within the range of possible approval.

These are considerations taken into account by Plaintiffs' Counsel in negotiating and evaluating the fairness of the Settlement and determining that entering into the Settlement is in the best interests of the Settlement Class. As the case law establishes, the Court should not second guess that determination at this stage so long as the proposed Settlement falls within a reasonable range of

possible approval and was the product of arm's length negotiations and vigorous investigation, as

here. Although continuing the litigation could conceivably have resulted in a greater recovery for

members of the Settlement Class, the recovery offered through the Settlement is guaranteed,

substantial and not dependent on a claims process or other limitation in getting the proceeds of the

Settlement Fund to Settlement Class Members. The Settlement represents a reasonable compromise

given the risks, delay and expense of pursuing the litigation on the merits, including a probable

appeal of any judgment in favor of the Settlement Class and of a Court order certifying the

Settlement Class. The immediacy of the recovery and the guarantee that all members of the

Settlement Class will recover argue for approval of the Settlement Agreement.

C.     **The Court should approve the form and manner of Class Notice and direct that notice be provided to the Settlement Class Members in accordance with the Settlement Agreement and should issue the requested ancillary orders necessary to establish a final approval process**

Pursuant to Federal Rule of Civil Procedure 23(e)(1) and (e)(5), the Settlement Agreement

provides for notice to the Class and an opportunity for Settlement Class Members to object to

approval of the Settlement.  Settlement Agreement , ¶¶ 1.27, 2.1.2, 8.1.1; Exhibit 1 to Preliminary

Approval Order, submitted herewith and attached to the Settlement Agreement as Exhibit A. The

Parties have agreed, subject to Court approval, to a notice plan which calls for individual mailed

notice that will provide Settlement Class Members with sufficient information to make an informed

decision about whether to object to the proposed Settlement. *Id.*  The proposed Settlement Notice

procedure includes direct mailing of the Notice attached to the Settlement Agreement as Exhibit 1

to the proposed Preliminary Approval Order and Exhibit A to the Settlement Agreement. It informs

Settlement Class Members of the nature of the action, the litigation background and the terms of the

agreement, including the definition of the Settlement Class, the relief provided by the Settlement

Agreement, the intent of Class Counsel to seek fees and costs, the proposed service fee payable to

the Named Plaintiffs, and the scope of the release and binding nature of the Settlement on

ACTIVE/73932530.3

Settlement Class Members. In addition, the Notice informs the Settlement Class Members that additional documents, including the Settlement Agreement and Plaintiffs Motion for Award of Attorneys' Fees are available via the website www.fidelity401klawsuit.com. The Notice also describes the procedure for objecting to the Settlement and states the date, time and place of the final approval hearing. *Id.* This notice and the manner in which it will be disseminated to Settlement Class Members satisfy Rule 23(e)(1) and constitutional due process concerns and should approved.

Finally, the Court should approve Plaintiffs' counsel's selection of a Settlement Administrator and appoint KCC Class Action Services LLC as Settlement Administrator, charged with undertaking the responsibilities described in the Settlement Agreement and schedule a fairness hearing and hearing on Plaintiffs' motion of an award of reasonable attorneys fees and service awards to Plaintiffs, as set forth in the proposed Preliminary Approval Order. Such orders are necessary to establish a reasonable and efficient process for disseminating notice, providing the opportunity for Settlement Class Members to object to approval of the Settlement and considering final approval of the Settlement.

## I.       CONCLUSION

As set forth above, the proposed settlement clearly meets the standard for preliminary approval. Accordingly, Plaintiffs respectfully request that the Court issue an Order: (1) consolidating the Actions; (2) certifying the Settlement Class as a non-opt-out class and appointing Class Counsel; (3) granting preliminary approval of the Settlement; (4) directing notice to Settlement Class Members and approving the plan and form of notice; (5) appointing KCC Class Action Services LLC as Settlement Administrator; (6) scheduling a Fairness Hearing; and (7) scheduling a hearing on Class Counsel's motion for fees and costs and the payment of Service Awards to the Named Plaintiffs.

Dated: July 3, 2014

ACTIVE/73932530.3

Respectfully submitted,

|  | /S/ Gregory Porter |
|---|---|
| Todd M. Schneider | Gregory Y. Porter *admitted pro hac vice* |
| Mark T. Johnson | BAILEY & GLASSER LLP |
| SCHNEIDER WALLACE COTTRELL | 910 17th Street, NW |
| BRAYTON KONECKY LLP | Suite 800 |
| 180 Montgomery Street, Suite 2000 | Washington, DC 20006 |
| San Francisco, CA 94104 | Tel: (202) 463-2101 |
| Tel: (415) 421-7100 | Fax: (202) 463-2103 |
| Fax: (415) 421-7105 |  |

Garrett W. Wotkyns          John Roddy, BBO No. 424240
Michael C. McKay             BAILEY & GLASSER LLP
SCHNEIDER WALLACE        125 Summer Street
COTTRELL KONECKY LLP      Suite 1030
8501 North Scottsdale Rd., Suite 270    Boston, MA 02110
Scottsdale, AZ 85253           Tel: (617) 439-6730
Tel: (480) 428-0142           Fax: (617) 951-3954
Fax: (866) 505-8036

Peter Mougey                Joseph C. Peiffer
Laura Dunning              Daniel J. Carr
LEVIN, PAPANTONIO, THOMAS,    PEIFFER ROSCA ABDULLAH
MITCHELL, RAFFERTY & PROCTOR   CARR & KANE, LLC
316 S. Baylen Street, Suite 600      201 St. Charles Avenue, Suite 4610
Pensacola, FL 32502           New Orleans, LA 70170
Tel: (850) 435-7121           Tel: (504) 523-2434
Fax: (850) 436-6147           Fax: (504) 523-2464

*Attorneys for Plaintiffs*

ACTIVE/73932530.3

## <u>CERTIFICATE OF SERVICE</u>

I, Gregory Y. Porter, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 3, 2014.

/s/ *Gregory Y. Porter*

ACTIVE/73932530.3