## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **LORI BILEWICZ**, *et al.*, | ) | |
| and all others similarly situated, | ) | |
| | ) | |
| **Plaintiffs,** | ) | Civil Action No. 13-10636-DJC |
| vs. | ) | |
| | ) | |
| **FMR LLC; FMR LLC INVESTMENT** | ) | |
| **COMMITTEE;** | ) | |
| and John and Jane Does 1-25, | ) | |
| | ) | |
| **Defendants.** | ) | |

| | | |
|---|---|---|
| **AIDEN YEAW, ALEX C. BROWN,** | ) | |
| and all others similarly situated, | ) | |
| | ) | |
| **Plaintiffs,** | ) | Civil Action No. 14-10035-DJC |
| vs. | ) | |
| | ) | |
| **FMR LLC; FMR LLC RETIREMENT** | ) | |
| **COMMITTEE;** | ) | |
| and John and Jane Does 1-25, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' UNOPPOSED MOTION FOR AN ORDER
## GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
## APPROVING A PLAN OF ALLOCATION OF THE SETTLEMENT PROCEEDS

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. PROCEDURAL BACKGROUND ................................................................................... 3

    A. Claims and Defenses ................................................................................................ 3

    B. The Litigation and Settlement History .................................................................... 4

    C. Preliminary Approval and Subsequent Events ........................................................ 6

III. ARGUMENT ................................................................................................................... 8

    A. The Court Should Grant Final Approval of the Settlement ..................................... 8

    1. The Standard for Final Approval ............................................................................. 8

    2. The Proposed Settlement Is the Result of Arm's Length Negotiations, is Untainted by Collusion, and is Fair, Reasonable, and Adequate, and Should be Granted Final Approval. ............................................................................................................... 10

        (a) The Presumption Favoring Settlement Based upon Sufficient Discovery and Arm's Length Negotiations Applies Here. ................................................... 10

        (b) The Settlement Provides All of the Procedural Protections Necessary to Ensure Fairness to Class Members ................................................................ 12

        (c) The Settlement is Fair, Reasonable and Adequate Based on the Variety of Factors that May be Considered by the Court and an Overall Review of the Terms of the Settlement. ............................................................................... 13

            (i) The Complexity, Expense and Likely Duration of the Litigation Should the Settlement be Rejected Favors Final Approval. ...................................... 13

            (ii) The Stage of the Proceedings and the Amount of Discovery Completed Supports Approval of the Settlement. ............................................... 15

            (iii) The Risk of Establishing Damages and Liability and Maintaining the Class through Trial Weighs in Favor of Approval of the Settlement. ............ 15

            (iv) The Reasonableness of the Settlement Relative to Both the Maximum Potential Recovery and the Likely Recovery, Taking into Account the Attendant Risks of Litigation, Favors Approval of the Settlement. ................ 17

    B. The Plan of Allocation is Fair and Reasonable and Should be Approved ............. 22

i

IV. CONCLUSION.................................................................................................................................23

## TABLE OF CASES AND AUTHORITIES

**Cases**

*Behrens v. Wometco Enters., Inc.*
  118 F.R.D. 534 (S.D. Fla.1988)............................................................................22
*Bussie v. Allmerica Fin. Corp.*
  50 F.Supp.2d 59 (D.Mass.1999)...........................................................................10
*City of Detroit v. Grinnell Corp.*
  495 F.2d 488 (2nd Cir. 1974).........................................................9, 13, 15, 16
*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*
  100 F.3d 1041 (1st Cir. 1996) ................................................................................7
*Cotton v. Hinton*
  559 F.2d 1326 (5th Cir. 1977) .............................................................................21
*Duhaime v. John Hancock Mut. Life Ins. Co.*
  177 F.R.D. 54 (D. Mass. 1997) ...........................................................................21
*Greenspun v. Bogan*
  492 F.2d 375 (1st Cir. 1974) ...............................................................................22
*In re Compact Disc Minimum Advertised Price Antitrust Litigation*
  216 F.R.D. 197 (D. Me. 2003).....................................................................passim
*In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*
  55 F.3d 768 (3rd Cir. 1995) .................................................................................20
*In re Lupron Marketing and Sales Practices Litigation*
  228 F.R.D. 75 (D. Mass. 2005) ................................................................. 8, 20, 21
*In re Relafen Antitrust Litigation*
  231 F.R.D. 52 (D. Mass. 2005) .............................................................8, 9, 10, 20
*In re Rite Aid Corp. Sec. Litig.*
  146 F. Supp. 2d 706 (E.D. Pa. 2001)...................................................................22
*In re Tyco Int'l, Ltd. Multidistrict Litig.*
  535 F. Supp. 2d 249 (D.N.H. 2007) ..................................................................9, 10
*Linney v. Cellular Alaska Partnership*
  151 F.3d 1234 (9th Cir. 1998) .............................................................................21
*Milstein v. Werner*
  57 F.R.D. 515 (S.D.N.Y. 1972) ...........................................................................21
*National Assn. of Chain Drug Stores v. New England Carpenters Health Benefits Fund*
  582 F.3d 30 (1st Cir.2009)....................................................................................10
*Newbridge Networks Sec. Litig.*
  1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ................................................22
*United States v. Cannons Engineering Corp.*
  720 F.Supp. 1027 (D.Mass.1989).........................................................................8
*Voss v. Rolland,*
  592 F.3d 242, 251 (1st Cir. 2010).........................................................................7
*Walsh v. Popular, Inc.*
  839 F. Supp. 2d 480................................................................................................9, 10
*Walsh v. Popular, Inc.*
  839 F. Supp. 2d 476 (D.P.R. 2012)........................................................................8

**Federal Rules**

Federal Rule of Civil Procedure 23(e) ........................................................................................ 7

Rule 23(e)(3) ............................................................................................................................... 9

I.      INTRODUCTION

Plaintiffs in *Bilewicz v. FMR LLC*, No. 13-10636-DJC (D. Mass.) ("Bilewicz Action"), Lori

Bilewicz, Jason Arcelay, Hassan Baami, Virginia G. Cherry, Carol A. Corner- Dolloff, Kevin

Desrosiers, Paul Dinicola, Robert Dugdale, Mark Evangelista, Dominic Farinella, Joseph E. Friend,

Elizabeth Cathe Harris, Ajua Cynthia Johnson, Michael W. Jones, Kevin M. Judd, Sr., Robert

Massoud, Jason Mora, Joseph L. Otero, Paula M. Parrish, Deborah Pontes, Janet C. Prifti, Heath

Racine, Darren J. Rillovick, Mary J. Rusiecki, Krista Schepanovsky, Robert Visconti, and Jacqueline

M. Wheeler (collectively, "Bilewicz Plaintiffs"), and Plaintiffs in *Yeaw v. FMR LLC*, No. 14-10035-

DJC (D. Mass.) ("Yeaw Action," and with the Bilewicz Action, the "Actions"), Aiden Yeaw and

Alex C. Brown (collectively, "Yeaw Plaintiffs," and with the Bilewicz Plaintiffs, the "Plaintiffs")

respectfully submit this memorandum in support of their request that the Court issue an Order

granting final approval of the class action settlement negotiated by the Plaintiffs and Defendant

FMR LLC ("FMR") concerning claims against FMR, the FMR LLC Retirement Committee[1]

("Retirement Committee"), and the members of the Retirement Committee during the Class Period

("Committee Members") (collectively, "Defendants," and with Plaintiffs, the "Parties"). The

proposed settlement was preliminarily approved by the Court by its Order entered July 10, 2014

(Dkt. 59).

A copy of the fully executed Class Action Settlement Agreement (the "Settlement

Agreement") was previously submitted to the Court as Exhibit 1 (Dkt. 53-1) to the memorandum

in support of Plaintiffs' motion for an Order Consolidating the Actions; Conditionally Certifying

---

[1] The Fifth Amendment to the Plan replaced all references to the "Investment Committee" with
"Retirement Committee" effective November 8, 2010. All references to the Retirement Committee
herein also include the FMR LLC Investment Committee, as applicable. All references to
Committee Members include the members of the Retirement Committee and the Investment
Committee, as applicable, during the Class Period.

the Settlement Class as a Non-Opt Out Class and Appointing Class Counsel; Preliminarily Approving of the Proposed Class Action Settlement; Directing Notice to the Settlement Class Members and Approving the Plan and Form of Notice; Appointing a Settlement Administrator; Scheduling a Fairness Hearing; and Scheduling a Hearing on Plaintiffs' Motion for Fees and Costs and the Payment of Service Awards ("Preliminary Approval Motion") (Dkt. No. 52). A proposed order to enter Judgment Approving Settlement of Class Actions was submitted as Exhibit B to the Settlement Agreement. (Dkt. 53-1 at pages 48 through 56.) Should the Court direct changes to the proposed order to enter Judgment Approving Settlement of Class Actions, Plaintiffs will submit a revised proposed order to enter Judgment Approving Settlement of Class Actions accordingly.

The Settlement Agreement reflects a compromise of the Parties' positions for the purpose of resolving, without further litigation, all issues and claims relating to the allegations made in these Actions on behalf of all members of the Class. It includes provisions designed to fairly and adequately compensate members of the Class for alleged harm arising out of Defendants' alleged fiduciary breaches in violation of the Employee Retirement Income Security Act ("ERISA") in connection with their management of the FMR LLC Profit Sharing Plan ("Plan"), as described in the Complaints. Based on the facts revealed in the course of settlement discussions and subsequent confirmatory discovery, the relevant law governing the claims asserted in the Complaint, and a reasoned assessment of the risks involved in proceeding with the litigation, Class Counsel have concluded that the benefits provided to the Class under the Settlement Agreement render settlement in the best interests of the members of the Class, in the form submitted herewith.

As discussed herein, the Settlement Agreement was reached through arm's length negotiations following extensive case investigation, litigation and motion practice. Plaintiffs subsequently conducted confirmatory discovery to substantiate certain fundamental considerations that informed their reasoning for agreeing to the terms of settlement. Plaintiffs and their counsel

believe that the Settlement is fair, reasonable and adequate. Accordingly, Plaintiffs petition this

Court for an Order granting final approval of the Settlement in the form submitted herewith.

## II.   PROCEDURAL BACKGROUND

### A.   Claims and Defenses

The nature of Plaintiffs' claims individually and on behalf of the Class consisting of all

persons who participated in the Plan during the Settlement Class Period, the history of the

litigation, and the course of the settlement negotiations engaged in by the Parties during the period

of May 2013 through July 2014, are described in detail in Plaintiffs' Preliminary Approval Motion,

the Memorandum of Law in support of that motion, and the Porter Declaration (Dkts. 52-54).

Accordingly, these matters are summarized but not discussed in detail here. Plaintiffs incorporate

herein by reference the more detailed description of the claims and litigation and settlement history

of this case set forth in the Preliminary Approval Motion and in the Porter Declaration.

The essence of Plaintiffs' claims in the Actions is that Defendants breached their duties

under ERISA to act solely in the interest of Plan participants when making certain decisions with

respect to the Plan. Specifically, Plaintiffs allege that Defendants failed to fulfill their fiduciary

duties by (1) offering investment options that were not in the best interests of Plan participants;

(2) selecting for and retaining in the Plan proprietary FMR-branded investment options that are

managed and offered by FMR subsidiaries; and (3) failing to obtain favorable revenue-sharing

rebate arrangements. In sum, Plaintiffs allege that, by filling the Plan's investment option menu

with an array of proprietary and often-overlapping funds and failing to obtain the same rebates

available in the marketplace, Defendants created and maintained an outmoded and unduly

expensive retirement plan investment structure that primarily benefited FMR and was inconsistent

with the practices of peer plans and modern fiduciary standards of prudence and loyalty.

In defense of Plaintiffs' claims, Defendants deny the allegations made in the Actions. Defendants maintain that their decision to offer a broad array of FMR mutual funds to Plan participants was not self-interested but, rather, was in the best interests of the Plan. Among the defenses that Defendants would have asserted are: Defendants believed that FMR provided an extensive platform of high quality mutual funds with an appropriate investment mix for its current and former employees; FMR offered a broad array of mutual funds to Plan participants, including funds in many different asset classes and with a wide variety of risk profiles and a range of fee structures; participants could select among these diverse options themselves, or have an expert select and manage their investments for them, free of charge; and the investment objectives, risks and costs of those investments were fully disclosed in writing to all participants before they made any investment decisions.

Defendants have already asserted a number of other defenses in the litigation that they would maintain should the case proceed: Fidelity contributed over $2.5 billion of its own money to Plan participants' accounts between 2007 and 2012; the Department of Labor expressly allows financial service providers who sponsor 401(k) plans to offer their own products to plan participants; the claims are time-barred under ERISA's statutes of limitations and repose; and certain claims are barred by the constitutional standing doctrine.

B.     The Litigation and Settlement History

As discussed in detail in the Preliminary Approval Motion, before filing the Bilewicz and Yeaw Complaints, Plaintiffs' counsel undertook extensive investigations to support the allegations and claims in the Complaints. Among other things, Plaintiffs' counsel, working with consultants, examined and evaluated numerous studies and surveys concerning the concentration of investment offerings with a single provider, the prudence of adding newly-incepted funds to retirement plans, the relative costs of actively-managed funds as compared to indexed funds, and the practices

4

employed in managing other very large plans similar to the Plan. In preparing the Bilewicz and Yeaw Complaints, Plaintiffs' counsel also reviewed Plan documents, investment brochures, prospectuses, annual reports, financial statements and accountant's reports for the Plan for the years 2005-2012. Plaintiffs' counsel also interviewed each of the named plaintiffs in the Actions. The initial complaint in the Bilewicz Action was filed on March 19, 2013. (Dkt. 1.) On June 3, 2013, Defendants filed a Motion to Dismiss (Dkt. 23) and a supporting Memorandum asserting several grounds for dismissal of the complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Plaintiff Bilewicz moved on September 3, 2013 to amend the Complaint to add additional plaintiffs and attached a proposed First Amended Class Action Complaint (the "Amended Complaint"). (Dkt. 34). On October 1, 2013, Defendants filed a Motion to Dismiss the Amended Complaint (Dkt. 38), arguing that: (1) Plaintiffs' claims are time-barred under ERISA's statutes of limitations and repose; (2) the Amended Complaint fails to state a claim for breach of fiduciary duties; (3) the Amended Complaint fails to state a claim for prohibited transactions; (4) the Amended Complaint fails to adequately plead fiduciary status of FMR; and (5) Plaintiffs lack standing to assert their claims. On October 29, 2013, Plaintiff filed a Memorandum in Opposition to the Motion to Dismiss. (Dkt. 41.) Defendants replied on November 26, 2013. (Dkt. 43.) The Court granted leave to amend on February 4, 2014, and the Bilewicz Plaintiffs filed the First Amended Class Action Complaint the same day. (Dkt. 46.) Defendants' Motion to Dismiss addressed to the Amended Complaint remains pending.

The Yeaw Plaintiffs filed the Yeaw Complaint on January 7, 2014. Shortly thereafter, the Parties informed the Court that they were entering mediation and there have been no further filings or actions by the Court in the matter aside from those relating to the Settlement Agreement.

On January 10, 2014, the Plaintiffs and FMR participated in a mediation with the Honorable Daniel Weinstein (retired) in San Francisco. Although Plaintiffs and FMR were not able to reach agreement on that day, they continued to work with Judge Weinstein to attempt to settle

the lawsuit. After multiple additional communications with the parties, Plaintiffs and FMR each accepted the key terms of an agreement and then negotiated a memorandum of understanding to embody those and other important terms, which were heavily negotiated by the parties over several weeks. The parties reached final agreement on the memorandum of understanding on April 23, 2014, and informed the Court of their agreement on April 24, 1014.

Thereafter, Plaintiffs and FMR prepared and executed the Settlement Agreement, memorializing the terms of the settlement for which Plaintiffs now seek final approval. The terms of the Settlement Agreement were the result of extensive, vigorous, and protracted negotiation, both before the mediation and, with respect to the remaining terms, after the mediation.

**C.    Preliminary Approval and Subsequent Events**

On July 10, 2014, the Court granted Plaintiff's unopposed motion for preliminary approval of the settlement ("Preliminary Approval Order"), finding that the proposed settlement was within the range of reasonableness to warrant preliminary approval. (Dkt. 59, p. 2, ¶ 5.) The Court also scheduled a Final Approval Hearing for October 14, 2014, and approved the proposed form and timing of the notice, setting a date of July 21, 2014, by which notice would be mailed to class members. (*Id.* at p. 4, ¶ 12.)

On July 14, 2014, pursuant to the Court's Preliminary Approval Order, the Settlement Administrator, KCC Class Action Services LLC, received a revised and updated list of Class Members and their last known mailing addresses. *See* Declaration of Justin R. Hughes Re: Notice Procedures ¶3. Steps were taken by the Settlement Administrator to ensure that the addresses and contact information were accurate and up to date. *Id.* On July 21, 2014, the Settlement Administrator caused the Notice of Settlement of Class Action to be mailed to Class Members at the addresses provided for each of the Class Members identified by FMR. *Id.* ¶4. Pursuant to the

Court's Preliminary Approval Order, Class Members have until September 4, 2014, to object to the Settlement.

To date, only two "objections" have been filed.  (Dkts. 64, 65.)  Although styled as objections, the submissions do not explain why the terms of the settlement are not fair or not reasonable. One objector appear to object solely to the notion that he is similarly-situated to the named plaintiffs. (Dkt. 64.) This is not a credible objection to the terms and conditions of the settlement. The other objector does not like the settlement because he does not agree that Fidelity did anything wrong. (Dkt. 65.) Again, this is not a credible objection to the terms and conditions of the settlement. Further, Class Counsel have responded to numerous phone calls and email communications with Class Members about the settlement. Declaration of Gregory Y. Porter In Support Of Plaintiffs' Motion For An Award Of Reasonable Attorneys' Fees And Costs, ¶9 (filed contemporaneously in support of indicated motion). Only one person out of the numerous Class Members with whom Class Counsel have communicated directly has made negative comments about the settlement. *Id.* Those comments, however, reflected a general hostility to class action practice and derided the theory of the case generally, rather than raising specific objections about the terms of the settlement. *Id.*

As the objection deadline does not run until September 4, 2014, it is not known at the time of this filing whether there will be any additional objectors and whether the amount of fees requested by Class Counsel will be a basis for any objections. If so, the Court will want to consider the merits of those objections and Plaintiff's response to each objection.

III.    **ARGUMENT**

A.      **The Court Should Grant Final Approval of the Settlement**

1.      **The Standard for Final Approval**

Judicial approval of a class action settlement is governed by Federal Rule of Civil Procedure 23(e). If the proposed settlement would bind class members, as is the case here, the Court may approve it only after a hearing and on finding that the settlement is "fair, reasonable and adequate." *Voss v. Rolland*, 592 F.3d 242, 251 (1st Cir. 2010) (citing *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996)). Although this standard differs from, and is stricter than, the standard applied on preliminary approval, many of the same factors are considered at both the preliminary and final approval stages of the approval process. "[I]f the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable." *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 33 (1st Cir. 2009).

There is no single test in the First Circuit for determining the fairness, reasonableness and adequacy of a proposed class action settlement. *Walsh v. Popular, Inc.,* 839 F. Supp. 2d 476, 480 (D.P.R. 2012) ("the First Circuit Court of Appeals has yet to definitively espouse a set of determinative factors for assessing the fairness, reasonableness and adequacy of a proposed settlement"); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 72, (D. Mass. 2005) (citing *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003). District courts have instead looked to a variety of factors derived from other circuits in making this assessment. In *Relafen*, the court identified two lists of such factors. One of those lists, which is drawn from Second Circuit authority and was applied by this district court in *In re Lupron Marketing and Sales Practices Litigation*, 228 F.R.D. 75, 93-98 (D. Mass. 2005), is labeled by the Court in *Relafen* as the "*Grinell*" list. It calls for consideration of:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount

8

> of discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through the
> trial; (7) the ability of the defendants to withstand a greater judgment; (8) the
> range of reasonableness of the settlement fund in light of the best possible
> recovery; (9) the range of reasonableness of the settlement fund to a possible
> recovery in light of all the attendant risks of litigation.

*Relafen*, 231 F.R.D. at 72 (quoting *City of Detroit v. Grinnell Corp.,* 495 F.2d 488, 463 (2nd Cir. 1974)).

The second list of factors identified by the Court in *Relafen*, quoted from the *Compact Disc* opinion,

include:

> (1) comparison of the proposed settlement with the likely result of litigation;
> (2) reaction of the class to the settlement; (3) stage of the litigation and the
> amount of discovery completed; (4) quality of counsel; (5) conduct of the
> negotiations; and (6) prospects of the case, including risk, complexity, expense
> and duration.

*Relafen,* 231 F.R.D. at 72 (*quoting Compact Disc*, 216 F.R.D. at 206)).

This *Compact Disc* list includes some of the same or similar factors as the *Grinell* factors, and

has been described by some district courts in the First Circuit as "a modified version of the *Grinnell*

factors." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 259 (D.N.H. 2007); *Walsh v.*

*Popular, Inc.,* 839 F. Supp. 2d at 480. Because the First Circuit has not specified a checklist of factors

or a specific test for determining whether a settlement is fair, reasonable, and adequate, district

courts in this circuit have the discretion to apply the factors most appropriate to the case, and

should engage in a studied review of the overall reasonableness of the settlement based on a wide

variety of factors "bearing on the central question of whether the settlement is reasonable in light

of the uncertainty of litigation." *Tyco*, 535 F. Supp 2d at 259 (quoting *Bussie v. Allmerica Fin. Corp.,* 50

F.Supp.2d 59, 72 (D.Mass.1999)).

Beyond consideration of the above-identified factors and the over-arching presumption

favoring the approval of a class action settlement where the parties have conducted sufficient

discovery and engaged in arm's length bargaining, the district court should also be satisfied that the

9

settlement is untainted by collusion. *Relafen,* 231 F.R.D. at 71.[2] Finally, although the district court

must carefully scrutinize the settlement for fairness, public policy favors settlements, particularly in

large or complex cases. *Tyco*, 535 F.Supp.2d at 259. Ultimately, the decision of whether to approve

the settlement "involves balancing the advantages and disadvantages of the proposed settlement

against the consequences of going to trial or other possible but perhaps unattainable variations on

the proffered settlement." *Walsh*, 839 F. Supp.2d at 480 (quoting *National Assn. of Chain Drug Stores

v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir.2009)).

> **2.      The Proposed Settlement Is the Result of Arm's Length Negotiations, is Untainted by Collusion, and is Fair, Reasonable, and Adequate, and Should be Granted Final Approval.**

> **(a)      The Presumption Favoring Settlement Based upon Sufficient Discovery and Arm's Length Negotiations Applies Here.**

The presumption in favor of approving class action settlements, where the settlement is the

result of arm's length settlement negotiations after sufficient discovery, applies to this application

for final approval of the Settlement. The Settlement in this case was arrived at following extensive,

arm's length settlement negotiations supervised by the Honorable Daniel Weinstein (retired). On

January 10, 2014, the parties participated in a mediation with Judge Weinstein in San Francisco.

Although the parties were not able to reach agreement on that day, they continued to work with

Judge Weinstein to attempt to settle the lawsuit. After multiple additional communications with

Judge Weinstein, the parties each accepted the key terms of a proposed settlement. They

subsequently executed a memorandum of understanding including those and other important

---

[2] In this regard, Rule 23(e)(3) requires that the parties seeking approval identify any agreement "made in connection with" the settlement proposal. The operative agreement here is the Settlement Agreement itself, though that agreement was preceded by a memorandum of understanding of the settlement parties that outlined the material terms contained in the Settlement Agreement. Also, prior to entering the negotiations, Plaintiffs' counsel entered into a Non-Disclosure Agreement with FMR to maintain confidentiality; that agreement has subsequently been amended in connection with the Settlement Agreement and Protective Order that was submitted to the Court, and has been incorporated into the Settlement Agreement. (Dkt. 56).

terms, which were heavily negotiated by the parties over several weeks. The parties reached final agreement on the memorandum of understanding on April 23, 2014, and informed the Court of their agreement on April 24, 1014.

This history of settlement negotiations in this case establishes that the Settlement is the result of arm's length negotiations, free from any hint of collusion. There is no basis to believe that Plaintiffs and Class Counsel were motivated by anything other than the best interests of the Class in negotiating and entering into the Settlement on behalf of the Class. As discussed in the Preliminary Approval motion and as will be outlined in Plaintiffs' Motion for an Award of Reasonable Attorneys' Fees and Costs and for Payment of a Reasonable Service Award, the proposed service awards for Plaintiffs are modest and reasonable compensation for the services they performed in furtherance of the litigation on behalf of the Class, and the Attorneys' fees requested by Plaintiffs are in line with the awards approved in other common-fund cases, represent a reasonable and justifiable multiple of Class Counsel's lodestar, are contingent on Court approval, were not negotiated with the Defendants, and are not a condition of the Settlement.

The other factor giving rise to a presumption of fairness, *i.e.* that sufficient discovery was conducted in the case, is also satisfied. Even though this Settlement was reached before formal discovery was initiated, the Settlement Agreement provides that the Defendants will cooperate in affording Class Counsel an opportunity for reasonable confirmatory discovery under a mutually-agreeable protective order to determine whether the Settlement was entered into based on information that was materially inaccurate. (Dkt. 53-1, p. 8) As part of this process, FMR has responded to Class Counsel's discovery requests and has produced more than 50,000 pages of documents. Those documents consist of correspondence, meeting minutes, presentations, and other materials reflecting the procedural and deliberative processes of FMR's Retirement Committee during the relevant period and also include financial data, accounting worksheets, and

numerous documents reflecting the performance, costs, allocation, and structure of the Plan during

the relevant period.

Having reviewed the documents produced by Defendants and in the confirmatory

discovery process, Class Counsel is satisfied that the Settlement Agreement was not based on

materially inaccurate information or misleading representations by Defendants. Although this

confirmatory discovery does not represent the universe of discovery that may have been

undertaken had this case survived beyond initial motion practice, this process does reflect that the

Settlement was the culmination of a true adversarial process, representing a good-faith, reasoned

compromise of a legitimate dispute. It also supports a finding that Class Counsel was sufficiently

familiar with the facts of the case, including facts supporting Defendants' affirmative defenses, to

make an informed judgment about the value of the case and the risks involved in proceeding to

trial. Together with the evidence that the Settlement was the result of arm's length negotiations, the

record of confirmatory discovery in this case requires the application of the presumption in favor

of final approval of the Settlement.

      **(b)**    **The Settlement Provides All of the Procedural Protections Necessary to Ensure Fairness to Class Members.**

Although the primary issue on a motion for final approval of a class action settlement is the

substantive fairness of the settlement, it is worth noting that the Settlement here also includes all of

the procedural protections, now incorporated into the Preliminary Approval Order, necessary to

ensure procedural fairness for class members. All class members have received the best notice

possible of the Settlement by means of a direct mailing of the Settlement Notice to the current or

last known address in possession of FMR for each Class Member. The notice itself contains all the

information necessary for Class Members to evaluate the terms of the Settlement and is

supplemented by a Settlement website that contains further information, including copies of the

Court's Orders in the case and selected pleadings filed by the parties. The notice also provides

contact information for both Class Counsel and counsel for Defendants, so that Class Members

can make further inquiries regarding the Settlement.

**(c)    The Settlement is Fair, Reasonable and Adequate Based on the Variety of Factors that May be Considered by the Court and an Overall Review of the Terms of the Settlement.**

As discussed below, an overall review of the Settlement, with due consideration of each of

the *Grinell* or *Compact Disc* factors, supports the presumption that the Settlement Agreement is fair,

reasonable, and adequate and warrants final approval.[3]

**(i) The Complexity, Expense and Likely Duration of the Litigation Should the Settlement be Rejected Favors Final Approval.**

Given the relatively early stage of the litigation of the Actions, achieving a resolution of the

matter through further litigation rather than by means of a settlement would involve substantial

time and resources, including significant discovery, further law and motion practice (including

motions to dismiss, class certification, summary judgment, and pre-trial motions), trial-preparation,

---

[3] One of the factors in both the *Grinnell* and *Compact Disc* lists, the reaction of the class to the settlement, cannot be briefed or considered until after the September 4, 2014, date by which Class Members are permitted to object to the Settlement. Once that deadline has passed and the information is known, the Settlement Administrator will provide a supplemental declaration identifying the number of opt-out requests and objections and will provide a copy of the written requests for exclusion and objections. The Court can review these documents and take them into consideration in evaluating the fairness of the settlement, together with any supplemental briefing permitted to address issues raised by the number of exclusion requests and the substance of any objections.

Additionally, the seventh *Grinell* factor, which considers the ability of the defendants to withstand a greater judgment, is irrelevant to the analysis here, as the Defendants have never asserted an inability to pay any possible judgment in this case, and Plaintiffs do not seek to justify the amount of settlement fund based upon Defendants' inability to pay more or the possibility of the Defendants' insolvency in the event of a larger judgment following a trial.

Finally, the quality of counsel, which appears as one of the *Compact Disc* factors, is not addressed here but has previously been established in this action by the Court's Order granting Plaintiff's Motion for Class Certification. (*See* Dkt. 59; Dkt. 54 (Porter Decl.), Exs. A-D.)

a trial estimated to take two or three weeks, and an almost certain appeal. This would have required a massive commitment of time and resources beyond that already expended in this case.

Specifically, as noted above, the Defendants' motion to dismiss the Amended Complaint was pending at the time the settlement was reached. Had litigation proceeded, Defendants almost certainly would have filed a dispositive motion in the Yeaw Action. Assuming that the cases survived that motion practice, the parties would begin discovery and Plaintiffs would prepare a motion for class certification. That process would require both parties to engage not only in costly document production and depositions, but each side would need to retain experts to opine as to certain of the class certification factors.

If the cases were ultimately certified as class actions, the parties would continue to engage in extensive merits discovery, which would require significant additional expenditures of time and money and would further require consultation with experts and expert reports. That discovery would involve production of many hundreds of thousands if not millions of pages of documents and possible scores of depositions. It is foreseeable that the parties would have disputes during this process that would require additional briefing and court intervention.

Following discovery, Defendants likely would seek summary judgment on at least some of the claims and defenses presented in the Actions. Beyond that, one would expect the parties to file numerous pre-trial motions, including motions in limine, and seek *Daubert* hearings. The trials in the Actions would then take weeks, during which time substantial additional resources would be consumed. Finally, should the case remain certified and Plaintiffs prevail at trial, Defendants would undoubtedly appeal the verdict as well as the Court's orders granting class certification. Such an appeal would not likely be resolved for years after the trial, substantially delaying any relief to class members, assuming Plaintiffs were to prevail both at trial and on appeal. All told, even with an aggressive scheduling order, final resolution of the Actions through litigation could take several

years and cost millions of dollars. Thus, consideration of the first of the *Grinnell* factors, the complexity, expense and likely duration of the litigation, strongly favors final approval of the Settlement. Were the parties to proceed with the litigation rather than the resolution of the case through settlement, substantial time and resources would have been expended with no guarantee of any recovery. The Settlement guarantees that class members will recover at least some of their alleged losses, and will do so promptly.

### (ii) The Stage of the Proceedings and the Amount of Discovery Completed Supports Approval of the Settlement.

Cognizant of this fact that the Settlement was reached at a relatively early stage in the litigation of the Actions, before discovery, the Plaintiffs negotiated for and have since conducted substantial confirmatory discovery. Specifically, FMR has produced more than 50,000 pages of documents relevant to the procedures and deliberative processes of FMR's Retirement Committee during the relevant period, the composition of the Plan and its fund offerings, and the performance and cost structure of the Plan. That targeted confirmatory discovery has allowed Class Counsel to determine that the decision to compromise the Actions on the proposed terms was reasonable and was not based on any materially inaccurate or misleading information provided by Defendants. Thus, even though the Settlement was reached relatively early in the litigation of the Actions, consideration of the third factor in the *Grinnell* and *Compact Disc* test, the stage of the litigation and the amount of discovery completed, does not counsel against approval of the settlement.

### (iii) The Risk of Establishing Damages and Liability and Maintaining the Class through Trial Weighs in Favor of Approval of the Settlement.

Both the *Grinnell* factors and the *Compact Disc* factors call for consideration of the risks involved in proceeding to trial. Such risks include the risk of proving liability, the risk of proving damages and the risk of maintaining class certification through trial and on appeal. In this case, although Plaintiffs believe that their claims are strong, they are compelled to acknowledge certain

obstacles to establishing liability and damages and to defeating Defendants' affirmative defenses. Indeed, the risk of failing to prevail at trial or on appeal is substantial. Such risks justify guaranteed recovery through settlement even if that recovery is less than the potential recovery Class Members might obtain were they to achieve total success at trial and on appeal.

As a threshold matter, and to state the obvious, a plaintiff only prevails when he can prove every element of his claim and defeat each of the defendant's affirmative defenses, and also prove damages. A defendant, on the other hand, need only prove a single affirmative defense or persuade the Court that plaintiffs have failed to prove a single element of their claims or damages in order to prevail. In the class context, plaintiffs face the additional burden of establishing the prerequisites for class certification and defending against subsequent attempts to decertify or limit the scope of the class. Here, Defendants have already contested each of the elements of Plaintiffs' claims and raised multiple defenses, and Defendants will certainly oppose class certification vigorously through any available procedural mechanisms. Accordingly, Plaintiffs and Class Members face multiple risks of a potential zero recovery should they proceed to trial.

More specifically, the Defendants have advanced the following arguments in their effort to defeat the claims of Plaintiff and the class in this case:

- Plaintiffs' claims are barred by the applicable statutes of repose and limitations;

- Plaintiffs' allegations, even if true, do not give rise to a plausible inference of wrongdoing supporting a cognizable claim;

- The alleged prohibited transactions are permitted by the U.S. Department of Labor;

- Plaintiffs fail to adequately allege, and have no basis to allege, fiduciary status with respect to FMR;

- Plaintiffs lack standing; and

- Since January 1, 2012, pursuant to the Eighth Amendment to the Plan, Fidelity has credited to the Plan approximately all the revenue received by FMR and its affiliates attributable to Plan investments in FMR-branded funds.

Plaintiffs believe that they would ultimately prevail on these issues, but realize that those as-yet-untested arguments raise a substantial possibility that the Actions could be dismissed or severely limited should the Defendants succeed in establishing any of the above assertions.

Moreover, even if Plaintiffs were able to avoid dismissal and proceed to trial with a certified class, the case still represents a dangerous "all or nothing" proposition at trial. As noted above, Defendants vigorously dispute the notion that they did anything wrong with respect to managing the Plan. Among other things, they maintain that (1) they consistently acted in the best interests of the Plan participants; (2) the Plan provides a generous, well-diversified platform of investment options; and (3) the investment objectives, risks and costs of those investments were fully disclosed to all participants. As such, the resolution of this case at any trial would require the finder of fact to make a true "judgment call" as to whether the Defendants' conduct was lawful or unlawful under ERISA. If that judgment call goes against Plaintiffs, they stand to recover nothing as a result. Thus, absent an amicable resolution such as the proposed Settlement, Plaintiffs will always face the risk that, even if they establish all of the facts that they have alleged regarding the Defendants' conduct, the fact-finder will determine that conduct to have been lawful, and class members will recover nothing.

**(iv) The Reasonableness of the Settlement Relative to Both the Maximum Potential Recovery and the Likely Recovery, Taking into Account the Attendant Risks of Litigation, Favors Approval of the Settlement.**

The Settlement provides Class Members with both monetary and non-monetary relief. The monetary relief consists of a cash payment to benefit the Class in the total amount of $12 million. This amount, net of court-approved reasonable attorney's fees, actual costs and reasonable service

payments to class representatives, will be allocated to class members proportionally based upon the relative value of their investments in the Plan during the relevant period. Payments from the settlement fund will be made to Class Members who meet the class definition based on FMR's records concerning Plan participant holdings during the class period, without the need for submitting a claim form or other request for payment. The Settlement Agreement does not provide for a "claims made" Settlement, or for any "reversion" of the Settlement Fund to the Defendants or any of their affiliates.

In addition to monetary relief, Class Members will benefit from non-monetary affirmative relief FMR has agreed to provide under the terms of the Settlement Agreement. Specifically, FMR, as sponsor of the Plan, has agreed to amend the Plan as follows:

- The Plan will make available a wide selection of both Fidelity and non-Fidelity mutual funds;

- The Plan will also continue to offer: (i) the Fidelity Freedom Funds – Class K as the Plan's qualified default investment alternative; and (ii) Fidelity's portfolio advisory service, Portfolio Advisory Services at Work (PAS-W). PAS-W will continue to be offered at no cost to participants;

- Fidelity is increasing auto-enrollment for eligible employees from 3% to 7% of eligible compensation, and will default current participants who are currently deferring below 7% to 7% of eligible compensation. Fidelity will apply its match to those increased contributions; and

- The Plan shall provide that revenue sharing attributable to non-Fidelity mutual funds shall be credited to participants in the same way as revenue attributable to Fidelity mutual funds and collective trusts pursuant to the 8th amendment to the 2005 restatement of the Plan is credited to participants. This revision to the Plan shall remain in effect for at least three years. (Dkt. 53-1, p. 15.)

These plan changes have significant value to Fidelity employees who are members of the Class.

The twelve million dollars in monetary relief guaranteed by the Settlement, though not what Plaintiffs may have recovered on behalf of the Class had they prevailed at trial, is significant. Each

of the Class members is expected to receive compensation for the losses allegedly caused by the

Defendants improper management of the Plan. Plaintiffs estimate that the *maximum* potential

recovery in this case, assuming a complete victory on the merits and disgorgement of *all* fees

collected by Fidelity from the Plan during the Class Period, may have been between $150 million

and $200 million. Although it is difficult to predict, the likely recovery may have been substantially

lower had the Court ruled that Fidelity was entitled to a reasonable fee, rather than liable for full

disgorgement. Such a determination would require the fact finder to make various assumptions

regarding the degree to which Plan participants were damaged by, and Defendants' benefitted from,

the alleged wrongful conduct. Even small deviations from certain assumptions made by Plaintiffs in

estimating their damages could result in a significantly lower potential recovery amount.

Nevertheless, assuming that Plaintiffs' damage estimate is accurate, the Settlement Fund, the $12

million in cash paid by Fidelity, represents a recovery of approximately 6% percent of the

maximum total recovery had Plaintiffs prevailed at trial and on appeal, and perhaps 15-20 percent

of the likely recovery. When one takes into account the value of the prospective relief and changes

to the Plan, the value of the full Settlement Terms is close to the likely recovery.

 Of course, these figures must be considered in the context of the considerable risk that

Plaintiffs would recover nothing if this case were litigated to conclusion, the time and resources

that would have been expended in obtaining a litigated result, and the substantial delay in obtaining

relief even if Plaintiffs prevailed at trial and on appeal, as discussed above. *In re Lupron Mktg. &*

*Sales Practices Litig.*, 228 F.R.D. at 97 ("In applying this test of reasonableness, 'the present value of

the damages plaintiffs would likely recover if successful, *appropriately discounted for the risk of not*

*prevailing*, should be compared with the amount of the proposed settlement.") (emphasis added)

(quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 806 (3rd

Cir. 1995)); *Relafen*, 231 F.R.D. at 74.

It is also well settled that a proposed settlement is not to be measured against a hypothetical ideal result that might have been achieved. *See, e.g., Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 68 (D. Mass. 1997) ("In evaluating the substantive fairness of a class action settlement, the court cannot, and should not, use as a benchmark the highest award that could be made to the plaintiff[s] after full and successful litigation of the claim[s]."); *Compact Disc.*, 216 F.R.D. at 211 ("As supervising judge, I am not to prejudge the merits of the case . . . and I am not to second-guess the settlement; I am only to determine if the parties' conclusion is reasonable."); *In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. at 97 (the court should not "hypothesize about larger amounts that might have been recovered"); *see also Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("This court has aptly held that it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators."); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("The trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'") (*quoting Milstein v. Werner*, 57 F.R.D. 515, 524-25 (S.D.N.Y. 1972)). As the First Circuit has stated, "any settlement is the result of a compromise -- each party surrendering something in order to prevent unprofitable litigation, and the risks and costs inherent in taking litigation to completion. A district court, in reviewing a settlement proposal, need not engage in a trial of the merits, for the purpose of settlement is precisely to avoid such a trial. *Greenspun v. Bogan*, 492 F.2d 375, 381 (1st Cir. 1974).

Thus, a class settlement need not recover the maximum damages that would be provable after establishing liability at trial, and the recovery of a portion of that amount is reasonable, particularly in complex and risky cases such as the Bilewicz and Yeaw Actions. Indeed, even

recoveries representing a very small percentage of the Defendant's maximum exposure may be found to be fair, adequate and reasonable *See, e.g.*, *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) (King, C.J.) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *Newbridge Networks Sec. Litig.*, No. A. 94-1678, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("an agreement that secures roughly six to twelve percent of a potential recovery . . . seems to be within the targeted range of reasonableness"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses"); *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 581 (E.D. Pa. 2003).

Under the circumstances present in this case, considering the substantial risks and considerable delay inherent in proceeding to trial and through the appellate process, it is likely that the Settlement Agreement for which the Parties seek this Court's approval represents the best realistic negotiated recovery for all members of the Class.

As stated in the Preliminary Approval Motion, these considerations were taken into account by Class Counsel in their own determination that the Settlement is fair, reasonable and adequate and in the best interests of the Class. As the above-cited case law establishes, it is not this Court's role to second guess that determination. Although continuing the litigation through trial and the appellate process could conceivably have resulted in a greater recovery for members of the Class, it could also have resulted in no recovery at all. The Settlement provides guaranteed monetary relief that is substantial, proportional to the alleged losses experienced by each Class Member, not dependent on a claims process or other hurdles and promptly realized. It also provides substantial affirmative relief in the form of Plan changes. The Settlement represents a reasonable compromise given the risks, delay and expense of pursuing the litigation on the merits, including a probable

21

appeal of any judgment in favor of the Class or certifying the class. The immediacy of the recovery and the guarantee that all members of the Class will be compensated support final approval of the Settlement Agreement.

**B.      The Plan of Allocation is Fair and Reasonable and Should be Approved**

The proposed plan of allocation of the Settlement Fund among class members also merits Court approval. As stated in the Notice of Proposed Class Action Settlement, Plaintiff has proposed that the Settlement Fund shall be allocated among Class members on a pro rata basis predicated upon their average account balances during the allocation period defined in the Settlement Agreement. This allocation is equitable and consistent with the claims asserted by Plaintiffs on behalf of the Class that Plan participants paid higher fees and obtained less return on their investment while Defendants benefited from fees on these funds. Under the plan of allocation, those who had more invested in the Plan will receive proportionally more from the Settlement Fund, and those who had less invested will receive a proportionally smaller share.

Because FMR knows the identities of all Settlement Class Members, the Settlement includes no requirement that Class Members submit a claim form or satisfy other conditions in order to receive their pro-rata share of the Settlement Fund. In other words, the members of the class will recover their proportional share of the Settlement Fund based upon their average account balances during the allocation period defined in the Settlement Agreement, with no Class Member receiving less than the ten dollar ($10.00) de minimus amount. Class Counsel believe that this plan of allocation is a fair and reasonable method for allocating the settlement proceeds among the members of the Class and respectfully request that it be approved by the Court concurrently with the proposed final approval of the Settlement.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an Order granting final approval of the Settlement in substantially the form agreed to by the parties and submitted herewith.

Dated: August 21, 2014

Respectfully submitted,

/s/ Gregory Y. Porter
Gregory Y. Porter *admitted pro hac vice*
BAILEY & GLASSER LLP
910 17th Street, NW
Suite 800
Washington, DC 20006
Tel: (202) 463-2101
Fax: (202) 463-2103

Garrett W. Wotkyns
Michael C. McKay
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
8501 North Scottsdale Rd., Suite 270
Scottsdale, AZ 85253
Tel: (480) 428-0142
Fax: (866) 505-8036

John Roddy, BBO No. 424240
BAILEY & GLASSER LLP
125 Summer Street
Suite 1030
Boston, MA 02110
Tel: (617) 439-6730
Fax: (617) 951-3954

Peter Mougey
Laura Dunning
LEVIN, PAPANTONIO, THOMAS,
MITCHELL, RAFFERTY & PROCTOR
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Tel: (850) 435-7121
Fax: (850) 436-6147

Joseph C. Peiffer
Daniel J. Carr
PEIFFER ROSCA ABDULLAH
CARR & KANE, LLC
201 St. Charles Avenue, Suite 4610
New Orleans, LA 70170
Tel: (504) 523-2434
Fax: (504) 523-2464

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2014, I served the foregoing via CM/ECF on all counsel of record.

/s/ Gregory Y.Porter