# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **LORI BILEWICZ,** *et al.*, <br> and all others similarly situated, <br><br>     **Plaintiffs,** <br><br>         vs. <br><br> **FMR LLC; FMR LLC INVESTMENT COMMITTEE;** <br> and John and Jane Does 1-25, <br><br>     Defendants. | ) <br> ) <br> ) <br> )  Civil Action No. 13-10636-DJC <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| **AIDEN YEAW, ALEX C. BROWN,** <br> and all others similarly situated, <br><br>     **Plaintiffs,** <br><br>         vs. <br><br> **FMR LLC; FMR LLC RETIREMENT COMMITTEE;** <br> and John and Jane Does 1-25, <br><br>     Defendants. | ) <br> ) <br> ) <br> )  Civil Action No. 14-10035-DJC <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER AWARDING REASONABLE ATTORNEY'S FEES AND COSTS

# TABLE OF CONTENTS

I.   INTRODUCTION ...............................................................................................................1

II.  ARGUMENT ....................................................................................................................3

   A.   Class Counsel Should Receive an Award of Reasonable Fees and Costs to be Paid From
        the Settlement Fund.................................................................................................3

   B.   The Percentage-of-the-Fund Method is the Preferred and Appropriate Method for
        Determining the Amount of Attorney's Fees to be Awarded to Class Counsel....................4

   C.   The Requested Fee of One Third of the Settlement Fund, or $4 Million, Is Reasonable
        Compensation for the Work Performed and Results Obtained by Counsel in this Case and
        Should Be Approved.................................................................................................7

        1.   The Size of the Fund Created and the Number of Persons Benefitted...............................8

        2.   The Presence and Nature of Any Objections .................................................................9

        3.   The Skill and Efficiency of Counsel .........................................................................10

        4.   Complexity and Duration of the Litigation ................................................................10

        5.   Financial Risks to the Attorneys...............................................................................11

        6.   Amount of Time Devoted to the Case ......................................................................12

        7.   The Awards in Similar Cases .................................................................................12

   D.   Class Counsels' Lodestar Confirms the Reasonableness of the Requested
        Compensation .......................................................................................................13

   E.   The Requested Awards of Litigation Costs and of Service or Incentive Payments to the
        Representatives of the Named Plaintiff Are Reasonable .........................................................14

III. CONCLUSION ...............................................................................................................18

## TABLE OF CASES AND AUTHORITIES

*Area Transit Comm'n*
   805 F.2d 396 (D.C.Cir. 1986) .......................................................................................4

*Bebchick v. Washington Metro. Area Transit Comm'n*
   805 F.2d 396 (D.C.Cir. 1986) .......................................................................................4

*Blum v. Stenson*
   465 U.S. 886 (1984) ......................................................................................................4

*Boeing Co. v. Van Gemert*
   444 U.S. 472 (1980) ...................................................................................................4, 6

*Branch v. FDIC*
   No. Civ.A. 91-CV-1327ORGS, 1998 WL 151249 (D. Mass. March 24, 1998) ...........7, 14

*Bussie v. Allmerica Financial Corp.*
   CIV.A. 97-40204-NMG, 1999 WL 342042 (D. Mass. May 19, 1999) .................5

*Conley v. Sears, Roebuck & Co.*
   222 B.R. 181 (D. Mass. 1998) .....................................................................................13

*Duhaime v. John Hancock Mut. Life Ins. Co.*
   989 F.Supp. 375 (D. Mass. 1997) ..........................................................................2, 5, 7

*Evans v. Jeff D.*
   475 U.S. 717 (1986) ......................................................................................................7

*Goldberger v. Integrated Res., Inc.*
   209 F.3d 43 (2d Cir. 2000) ...........................................................................................8

*Gorsey v. I.M. Simon, Co., Inc.*
   Civ. A. No. 86-1875-Z 1991 WL 181439 (D.Mass. Sept. 4, 1991) ...........................7

*Gunter v. Ridgewood Energy Corp.*
   223 F.3d 190 (3d Cir. 2000) .........................................................................................8

*In re Cabletron Sys., Inc. Sec. Litig.*
   239 F.R.D. 30 (D. N.H. 2006) ......................................................................................6

*In re Cendant Corp. PRIDES Litig.*
   243 F.3d 722, 742 (3d Cir. 2001)   ……………………………………………………...…14

*In Re Compact Disc Minimum Advertised Price Antitrust Litig.*
   292 F.Supp.2d 184 (D.Me. 2003) ...............................................................................6

*In re Fidelity/Micron Securities Litig.*
    167 F.3d 735 (1st Cir. 1999) ............................................................................ 3, 15

*In re Fleet/Norstar Securities Litigation*
    935 F.Supp. 99 (D.R.I. 1996) ................................................................................... 5

*In re Lupron Marketing and Sales Practices Litigation*
    01-cv-10861-RGS, 2005 WL2006833 No. MDL 1430 (D. Mass. August 17, 2005) ..................... 3, 5

*In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*
    982 F.2d 603 (1st Cir. 1992) ..................................................................................... 6

*In re Pacific Enters. Sec. Litig.*
    47 F.3d at 378 (9th Cir.1995) ................................................................................. 12

*In re Puerto Rican Cabotage Antitrust Litigation*
    815 F.Supp.2d 448 (D. P.R. 2007) ................................................................... 4, 6, 13

*In re Relafen Antitrust Litig.*
    231 F.R.D. 52 (D. Mass. 2005) ............................................................................ 8, 12

*In re Rite Aid Corp. Sec. Litig.*
    396 F.3d 294 (3d Cir.2005) ....................................................................................... 6

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*
    56 F.3d 295 (1st Cir. 1995) ............................................................... 3, 5, 6, 7, 13, 14

*In re Tyco Int'l, Ltd. Multidistrict Litig.*
    535 F. Supp. 2d 249 (D.N.H. 2007) ....................................................................... 3, 4

*In re Zyprexa Prods. Liab. Litig.*
    594 F.3d 113 (2d Cir.2010) ....................................................................................... 4

*Lipsett v. Blanco*
    975 F.2d 934 (1st Cir. 1992) ..................................................................................... 4

*Mazola v. May Dept. Stores Co.*
    No. 97CV10872-NG 1999 WL 1261312 (D.Mass. Jan. 27, 1999) ..................................... 12

*Victor v. Argent Classic Convertible Arbitrage Fund L.P.*
    623 F.3d 82 (2d Cir.2010) ......................................................................................... 4

*Vizcaino v. Microsoft Corp.*
    290 F.3d 1043 (9th Cir.2002) ................................................................................. 13

*Walsh v. Popular, Inc.*
    839 F. Supp. 2d 476 (D.P.R. 2012) ........................................................................... 6

*Weinberger v. Great Northern Nekoosa Corp.*
  925 F.2d 518 (1st Cir.1991) ............................................................................5

*Wells v. Dartmouth Bancorp, Inc.*
  813 F. Supp. 126 (D. N.H. 1993) ....................................................................4

*Zucker v. Occidental Petroleum Corp.*
  192 F.3d 1323 (9th Cir. 1999) *cert. denied*, 529 U.S. 1066 (2000) ............................7

**Rules**

Federal Rule of Civil Procedure 23(h)....................................................................3

Federal Rule of Civil Procedure 23(h)(1)-(3)............................................................3

Federal Rule of Civil Procedure 52(a) .....................................................................3

I.   **INTRODUCTION**

Class Counsel have pursued these complicated ERISA class actions, committing their services and resources and advancing substantial costs to prosecute the cases for the past year and a half. To date, these attorneys have received no compensation for their efforts, nor have they received reimbursement for any of the substantial out-of-pocket costs they incurred. All of their fees are contingent upon a financial recovery for their clients in these cases. After well over a year of uncompensated effort, along with substantial risk of non-recovery, Class Counsel have achieved a $12 million cash settlement in addition to substantial affirmative relief, including making available a wide selection of both Fidelity and non-Fidelity mutual funds, continuing to provide Fidelity's portfolio advisory service at no cost, and increasing auto-enrollment from 3% to 7% of eligible compensation (the "Settlement"). The Settlement provides an immediate, meaningful and certain benefit to Class Members.

By this motion, Class Counsel seek an award of attorney's fees in the amount of $4 million, plus the actual costs they incurred in prosecuting this case to a successful conclusion through a negotiated settlement after nearly one-and-a-half years of active litigation.[1] Pursuant to the negotiated settlement and the common fund doctrine, these amounts would be paid from the $12 million Settlement Fund negotiated by the parties; the remainder of the fund, after payment of costs incurred in connection with notice and settlement administration procedures, are to be distributed to Class Members on a pro rata basis, pursuant to the proposed plan of allocation submitted to the court for approval as part of Plaintiff's Motion for an Order Granting Final Approval of Class Action Settlement and Approving a Plan of Allocation of the Settlement Proceeds (Dkt. 59.) The

---

[1] Class Counsel secured final agreement on all of the substantive terms of the Settlement, including the amount of the Settlement Fund, without negotiating any proposed attorney's fee award with Defendants. The amount of fees and costs that Class Counsel would request was not an issue negotiated by the parties, and the settlement is not contingent on an award of fees in any particular amount. Declaration of Gregory Y. Porter ("Porter Decl.") ¶10.

proposed attorney's fee award would be divided among the four law firms that represented Plaintiffs and the certified class in these actions; the costs incurred in connection with the litigation would be reimbursed to the firms that incurred them.

In setting fees, the principal measure used by courts is the ratio of benefits obtained to the amount of fees sought. *See Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F.Supp. 375, 377 (D. Mass. 1997). Given the recovery obtained, the complexity of the case, the quality and quantity of the work performed, and the risks involved in undertaking this litigation, the fee requested here is fair and reasonable. By either the percentage-of-fund or the lodestar measure, the requested fee constitutes reasonable compensation for the hard-fought results Counsel have achieved and should be approved. Finally, the $4 million fee falls within the range of attorney's fee awards courts have approved in other class actions.

The reimbursement of litigation costs and expenses that Class Counsel are asking the Court to approve concern only the actual litigation costs and expenses incurred in the course of the litigation. Such litigation costs, in the total amount of $155,452.85, includes (i) documented out-of-pocket charges for filing fees; (ii) documented travel expenses of Class Counsel for attending alternative dispute resolution sessions and meetings with clients; (iii) consultant fees; and (iv) costs incurred to date in connection with providing notice to the members of the Class regarding the pendency of the class action and the proposed settlement. To the extent that additional costs are incurred in connection with the settlement administration process for which Class Counsel have yet to be billed, these will be paid from the Settlement Fund. Counsel will not seek reimbursement of direct expenses such as travel incurred in connection with the Fairness Hearing.

This application for an award of reasonable fees and litigation expenses is filed pursuant to the Court's July 10, 2014 Order Granting Preliminary Approval of the Settlement (Dkt. 59) and the Court's Subsequent Order Granting the Unopposed Motion for Extension of Time to August 21,

2014 (Dkt. No. 63). Class Members will, therefore, have an adequate opportunity to register any objections they might have to Class Counsel's requests for fees and costs and the request for payment of a service award from the Settlement Fund. In the event that any such objections are filed, Plaintiffs will provide the Court with further briefing addressing the substance of each such objection.

## II.   ARGUMENT

### A.   Class Counsel Should Receive an Award of Reasonable Fees and Costs to be Paid from the Settlement Fund

Federal Rule of Civil Procedure 23(h) provides "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." The Rule requires that an application for an award of fees be made by motion, that Class Members be provided the right to object to the motion and that the court hold a hearing and state its findings of facts and conclusions of law under Rule 52(a).  Fed. R. Civ. P. 23(h)(1)-(3).

Under the long-recognized common fund or common benefit doctrine, litigants or lawyers who recover a common fund for the benefit of a class of persons other than themselves are entitled to reasonable attorney's fees from the fund prior to the distribution of the balance to the class. *In re Lupron Mktg. & Sales Practices Litig.,* 01-CV-10861-RGS, 2005 WL 2006833 No. MDL 1430 (D. Mass. August 17, 2005); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 265 (D.N.H. 2007) ("An attorney who recovers a common fund for the benefit of others is entitled to 'a reasonable attorney's fee from the fund as a whole.'") (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)). "The common fund doctrine is founded on the equitable principle that those who have profited from litigation should share its costs." *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.* 56 F.3d 295, 305 n. 6 (1st Cir. 1995); *see also In re Fidelity/Micron Securities Litig.* 167 F.3d 735, 737 (1st Cir. 1999) ("[L]awyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund, as a

general matter, expenses, reasonable in amount, that were necessary to bring the action to a

climax."). Thus, the purpose of the doctrine is to "spread the costs of litigation among all the

beneficiaries of an identifiable fund over which a court can exercise legitimate control, in effect

guarding against the unjust enrichment of passive beneficiaries at the expense of the active

beneficiary." *In re Lupron*, 2005 WL2006833 at *2 (quoting *Bebchick v. Washington Metro. Area Transit

Comm'n,* 805 F.2d 396, 402 (D.C.Cir. 1986)); *In re Tyco,* 535 F.Supp.2d at 265; *Boeing Co.,* 444 U.S. at

478; *In re Zyprexa Prods. Liab. Litig.,* 594 F.3d 113, 128-9 (2d Cir. 2010). "Class action lawsuits are the

prototypical example of instances where the common fund doctrine can apply." *In re Puerto Rican

Cabotage Antitrust Litig.,* 815 F.Supp.2d 448, 457 (D. P.R. 2007) (quoting *Victor v. Argent Classic

Convertible Arbitrage Fund L.P.,* 623 F.3d 82, 86 (2d Cir. 2010)).

The efforts of Plaintiffs' and their attorneys in prosecuting this case have resulted in a

negotiated settlement that provides for a common fund of $12 million for Class Members and

substantial affirmative relief that will benefit both Class Members and other Plan participants. Based

on the above-described precedent, Class Counsel are entitled to and respectfully seek an award of

fees and costs to be paid from that fund prior to the distribution of the balance to Class Members.

**B.     The Percentage-of-the-Fund Method is the Preferred and Appropriate
        Method for Determining the Amount of Attorney's Fees to be Awarded to
        Class Counsel**

In assessing the reasonableness of attorney's fees, courts have traditionally relied upon two

forms of analysis: the "lodestar" approach and the "reasonable percentage of the common fund"

approach. *In re Puerto Rican Cabotage,* 815 F. Supp. 2d at 457-8; *Wells v. Dartmouth Bancorp, Inc.,* 813 F.

Supp. 126, 129-30 (D. N.H. 1993).  The lodestar approach multiplies the reasonable hours spent in

litigating the case by the reasonable hourly rates of those who spent time on the case, subject to a

multiplier or discount for special circumstances. *In re Thirteen Appeals,* 56 F.3d at 305 (citing *Blum v.

Stenson,* 465 U.S. 886 (1984)); *Lipsett v. Blanco,* 975 F.2d 934, 937 (1st Cir. 1992). Under the

percentage-of-the-fund analysis, the court fashions the fee award based on a reasonable percentage

of the fund recovered for those benefitted by the litigation. *In re Thirteen Appeals*, 56 F.3d at 305.

In *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518 (1st Cir.1991), the Court of

Appeals for the First Circuit recognized "the tendency exhibited by some courts, particularly in

common fund cases, to jettison the lodestar in favor of a 'reasonable percentage of the fund'

approach." *Id.* at 526 n. 10. Subsequently, when called on to "pass upon the legitimacy of the POF

method in common fund cases," the Court directly endorsed it:

> We think that a more malleable approach is indicated. Thus, we hold that
> in a common fund case the district court, in the exercise of its informed
> discretion, may calculate counsel fees either on a percentage of the fund
> basis or by fashioning a lodestar. Our decision is driven both by our
> recognition that use of the POF method in common fund cases is the
> prevailing praxis and by the distinct advantages that the POF method can
> bring to bear in such cases.

*In re Thirteen Appeals,* 56 F.3d at 307. The Court then went on to identify some of the "distinct

advantages" of the POF approach, including: (1) it is less burdensome to administer, (2) it reduces

the possibility of collateral disputes, (3) it enhances efficiency throughout the litigation, (4) it is less

taxing on judicial resources, and (5) it better approximates the workings of the marketplace.  *Id.*; *see

also In re Lupron, 2005 WL 2006833*, at \*3 (identifying the advantages of the POF approach

recognized by the Court in *In re Thirteen Appeals*). Other courts in this district have recognized one or

more of these advantages of the percentage of the fund method in common fund cases. *See e.g.*,

*Duhaime v. John Hancock,* 989 F. Supp. at 377 (percentage of fund method "appropriately aligns the

interests of the class with the interests of the class counsel--the larger the value of the settlement, the

larger the value of the fee award"); *In re Fleet/Norstar Sec. Litig.,* 935 F. Supp. 99, 108 (D.R.I. 1996)

(noting that task of calculating lodestar in complex case would be wasteful, and percentage of fund

"better approximates workings of marketplace"); *Bussie v. Allmerica Fin. Corp.*, CIV.A. 97-40204-

NMG, 1999 WL 342042, \*2 (D. Mass. May 19, 1999) (percentage of fund method aligns interests of

class with interests of class counsel; encourages efficiency and avoids the disincentive to settle cases early created by lodestar method).

Since the First Circuit's decision in *In re Thirteen Appeals,* district courts within this Circuit have characterized the percentage of fund approach as the "preferred" or "favored" methodology for determining reasonable fees in common fund cases. *Walsh v. Popular, Inc.*, 839 F. Supp. 2d 476, 483 (D.P.R. 2012) ("The POF approach methodology is favored in this Circuit for determining the appropriate attorney's fees in common fund cases . . . ."); *In re Puerto Rican Cabotage*, 815 F. Supp. 2d at 458 ("The Court confirms that it shall employ the percentage of the fund approach, as opposed to the lodestar method, to Lead Counsel's requested attorney fees as that methodology is favored in this Circuit"); *In re Cabletron Sys., Inc. Sec. Litig.*, 239 F.R.D. 30, 37 (D. N.H. 2006) ("The POF method is preferred in common fund cases because 'it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'") (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir.2005); *see also In re Compact Disc Minimum Advertised Price Antitrust Litig.,* 292 F.Supp.2d 184 (D.Me. 2003) (identifying the percentage of the fund method as the "prevailing approach").

Pursuant to the above-discussed authorities, Plaintiffs request that the Court use the percentage of the fund approach to determine the reasonable compensation that should be paid to Class Counsel in this common fund case.[2] There is no reason to deviate from this favored method

---

[2] For the purposes of the attorney's fees analysis, the First Circuit has defined common fund cases as cases in which funds are "generated in substantial part by the disproportionate strivings of a few . . . to the benefit of a much larger number" and which have the three primary characteristics that were found to be significant by the Supreme Court in *Boeing v. Van Gemert*, 444 U.S. at 478-79. *In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 610 (1st Cir. 1992); *In re Thirteen Appeals,* 56 F.3d at 306 n. 9. Those three characteristics are: (1) the fund's beneficiaries are small in number and easily identifiable, (2) the benefits can be traced with some accuracy, and (3) the costs of litigation can be shifted with some exactitude to those benefitting. *Boeing Co. v. Van Gemert*, 444 U.S. at 478-479; *In re Thirteen Appeals*, 56 F.3d at 306 n. 9. Each of these factors applies in this case, as the efforts of Plaintiff and its counsel have established a $12 million

for determining attorney's fees in common fund cases. Further, adopting this approach will favor efficiency and spare the court the not insignificant burden of the evaluation of counsel's detailed time records that would be required by using the lodestar approach.[3] *See, In re Fleet/Norstar*, 935 F. Supp. at 107-8 (in settlement involving five law firms billing for more than 7,300 hours, "the task of administering the lodestar method of calculation is both overwhelming and wasteful"); *Branch v. FDIC*, No. Civ.A. 91-CV-1327ORGS, 1998 WL 151249, *3 (D. Mass. March 24, 1998) ("Another not inconsiderable argument favoring the POF method is that it relieves courts of the burden of wading through often foot-thick stacks of bills attempting to parse the value of lawyers' time.").

C.     **The Requested Fee of One Third of the Settlement Fund, or $4 Million, Is Reasonable Compensation for the Work Performed and Results Obtained by Counsel in this Case and Should Be Approved**

A district court has both the authority and the duty to determine the fairness of attorney's fees in a class action settlement. *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir. 1999), *cert. denied*, 529 U.S. 1066 (2000), *Duhaime v. John Hancock,* 989 F.Supp. at 376 –377; *Gorsey v. I.M. Simon, Co., Inc.,* Civ. A. No. 86-1875-Z, 1991 WL 181439, *1 (D. Mass. Sept. 4, 1991). In discharging this duty, the amount of attorney's fees that the court determines to be appropriate rests in the court's sound discretion. *Evans v. Jeff D.*, 475 U.S. 717, 736, n. 26 (1986); *In re Thirteen Appeals*, 56 F.3d at 302 (court has substantial discretion in evaluating fairness of fees).

---

fund for the benefit of Class Members. The identities of Class Members are known, as are their proportional losses arising from Defendant's alleged improper conduct, permitting, with the approval of the Court and under the direction of the Settlement Administrator, the equitable distribution of the fund among Class Members.

[3] The four firms representing the Class have expended more than 2,457 hours on this case, through the efforts of a significant number of attorneys and paralegals. (This figure is the total hours from each of the declarations submitted by Class Counsel and reflected in the exhibits thereto). Plaintiffs have provided the Court with declarations setting forth, in summary form, the professional time spent on the case by each of the three firms representing Plaintiff and the class, including the number of hours spent by each legal worker who devoted time to the case and his or her hourly rate. As discussed below, this can be used by the Court as a lodestar "cross-check" against the percentage of fund calculation and establishes that the percentage of fund calculation actually results in a smaller fee award than the lodestar. Additionally, should the Court desire to conduct an *in camera review* of Class Counsel's detailed time records, we will provide them at the Court's request.

The First Circuit has not adopted any particular criteria or set of factors to be applied in determining the reasonableness of a fee request. District courts within the circuit, however, have made use of factors identified by the Second and Third Circuits. Those factors, as identified by the district court in *In re Relafen Antitrust Litig.* 231 F.R.D. 52, 79 (D. Mass. 2005), include (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *Id,*(citing *Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190, 195 n. 1 (3d Cir. 2000) and *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 50 (2d Cir. 2000) (articulating additional factors including "the risk of the litigation," "the requested fee in relation to the settlement," and "public policy considerations"). Applying these considerations to the facts of this case supports the requested fee of $4 million.

### 1.       The Size of the Fund Created and the Number of Persons Benefitted

The size of the fund is $12,000,000 in addition to substantial affirmative relief,  which is a fair and reasonable recovery given the multiple defenses advanced by the Defendants, the risks involved in proceeding to trial, and the possibility of reversal on appeal of any favorable judgment. Under the terms of the Settlement Agreement, virtually all of the members of the Class are guaranteed to benefit from the fund, as no claims process is involved, and the identity of Class Members and the information necessary to determine their compensation is known to FMR and available from its records. Class Members will receive pro-rata shares of the Settlement Fund based upon their average account balances during the allocation period defined in the Settlement Agreement. This is a successful result benefiting all Class Members for which Class Counsel should be fairly compensated.

### 2.      The Presence and Nature of Any Objections

The Class was advised in the Notice of Proposed Class Action Settlement that Class Counsel would file a motion seeking approval of reasonable attorney's fees to be paid from the Settlement Fund. They were also advised of the opportunity to object to the settlement, and the process and deadline of September 4, 2014 by which they could do so. Copies of this motion and the supporting declaration and other previously-filed papers relevant to the motion will have been available to Class Members for a period of fourteen (14) days prior to the deadline for submitting objections. To date, only two "objections" have been filed.  (Dkts. 64, 65.)  Although styled as objections, the submissions do not explain why the terms of the settlement are not fair or not reasonable. One objector appear to object solely to the notion that he is similarly-situated to the named plaintiffs. (Dkt. 64.) This is not a credible objection to the terms and conditions of the settlement. The other objector does not like the settlement because he does not agree that Fidelity did anything wrong. (Dkt. 65.) Again, this is not a credible objection to the terms and conditions of the settlement. Further, Class Counsel have responded to numerous phone calls and email communications with Class Members about the settlement.  Porter Decl. ¶9.  Only one person out of the numerous Class Members with whom Class Counsel have communicated directly has made negative comments about the settlement. *Id.* Those comments, however, reflected a general hostility to class action practice and derided the theory of the case generally, rather than raising specific objections about the terms of the settlement.  *Id.*

As the objection deadline does not run until September 4, 2014, it is not known at the time of this filing whether there will be any additional objectors and whether the amount of fees requested by Class Counsel will be a basis for any objections. If so, the Court will want to consider the merits of those objections and Plaintiff's response to each objection.

### 3.     The Skill and Efficiency of Counsel

This Court has previously considered the qualifications of Class Counsel based upon the evidence of Class Counsel's experience and areas of expertise submitted in granting the motion for preliminary approval of the Settlement. (Dkt. 59). Plaintiffs do not resubmit evidence of Class Counsel's qualifications here, but refer the Court to its prior submissions; including ECF Document No. 54, the Declaration of Gregory Porter in Support of the Motion for Preliminary Approval and Exhibits A through D thereto which are the firm resumes for each of the firms representing Plaintiffs and the Class. Plaintiffs also refer the Court to the record in this case, which demonstrates that Class Counsel have prosecuted this case with a level of skill and expertise that warrants fair compensation for their efforts.

Class Counsel have also taken steps to ensure that this matter has been litigated efficiently. Class Counsel have sought expedient resolution of the case prior to trial. In particular, each of the four lead counsel firms has tasked one or two attorneys with primary responsibility for the case. The four firms have worked together collaboratively and have taken steps to avoid duplicative or inefficient work. *See generally* Porter Decl. ¶3; Declaration of Peter Mougey ¶3 ("Mougey Decl."); Declaration of Mark T. Johnson ¶3 ("Johnson Decl."); Declaration of Joseph C. Peiffer ¶3 ("Peiffer Decl.").

### 4.     Complexity and Duration of the Litigation

As the Court is aware, this case was filed in March 2013 and was actively litigated for nearly a year and a half. The essence of Plaintiffs' claims in the consolidated actions is that Defendants breached their duties under ERISA to act solely in the interest of Plan participants when making certain decisions with respect to the Plan. Specifically, Plaintiffs allege that Defendants failed to fulfill their fiduciary duties by (1) offering investment options that were not in the best interests of Plan participants; (2) selecting for and retaining in the Plan proprietary FMR-branded investment

options that are managed and offered by FMR subsidiaries; and (3) failing to obtain favorable revenue-sharing rebate arrangements. In sum, Plaintiffs allege that, by filling the Plan's investment option menu with an array of proprietary and often-overlapping funds and failing to obtain the same rebates available in the marketplace, Defendants created and maintained an outmoded and unduly expensive retirement plan investment structure that primarily benefited FMR and was inconsistent with the practices of peer plans and modern fiduciary standards of prudence and loyalty.

### 5.     Financial Risks to the Attorneys

When Class Counsel filed the Actions, there were no assurances that any fees would ever be received.  No other court had decided (or has yet decided, for that matter) that claims similar to those of the Plaintiffs are entitled to judgment as a matter of law. No other court had found, on facts similar to this case, that the provision of investment options similar to those offered by Fidelity is a prohibited action or a breach of fiduciary duty. *See, e.g.*, *Merrimon v. Unum Life Ins. Co. of Am.*, 13-2128, 2014 WL 2960024 (1st Cir. July 2, 2014). In addition, the law on what facts must be shown to establish "actual knowledge" of a breach of fiduciary duty sufficient to trigger ERISA's shorter statute of limitations was, and remains, ambiguous. These unknowns and others created great uncertainty as to whether Class Counsel would be able to defeat Defendants' challenges to the pleadings and dispositive motions, get a class certified and have any chance at prevailing on the merits. Class Counsel were aware that they would likely have to expend thousands of hours, and hundreds of thousands of dollars, in prosecuting this case over an extended period of time before even having a possibility of recovering a fee. Class Counsel alone bore the risk of the case being dismissed at the pretrial stage, of not obtaining an order certifying a class, of not prevailing at trial, or even losing on appeal. *See id.*

6.      **Amount of Time Devoted to the Case**

All told, Class Counsel expended more than 2,457 hours in the prosecution of this case on behalf of the Class. This, of course, does not include additional hours spent preparing this motion and following the filing of this motion, briefing a response to any objections that might be filed, appearing at the final approval hearing or working with the settlement administrator on the administration of the settlement.

7.      **The Awards in Similar Cases**

The requested fee of one third of the Settlement Fund is not out of proportion with awards in other large class actions. *See In re Relafen*, 231 F.R.D. at 82 (holding that "the one-third percentage of fund fee is not unreasonable as a matter of law" and awarding fees of one-third percentage of the fund, representing a lodestar multiplier of 2.02); *In re Pacific Enters. Sec. Litig.*, 47 F.3d at 378, 379 (9th Cir.1995) (affirming the district court's award of 33% of the $12 million dollar settlement fund); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 303 (finding district court's reliance on the average class action fee percentage of 31% as within the court's discretion); *Mazola v. May Dept. Stores Co.*, No. 97CV10872-NG, 1999 WL 1261312, *4 (D. Mass. Jan. 27, 1999) ("[I]n this circuit, percentage fee awards range from 20% to 35% of the fund. This approach mirrors that taken by the federal courts in other jurisdictions."); *Nilsen v. York Cnty.*, 400 F. Supp. 2d 266, 281 (D. Me. 2005) ("Median attorney fee awards in other class actions generally… range within a few percentage points on either side of 30%."); *In re Merry-Go-Round Enterprises, Inc.*, 244 B.R. 327 (Bankr. D. Md. 2000) (allowing a 40% fee on a recovery of $185 million); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1133 (W.D. La. 1997) (noting that 50% is the upper limit for the fee from a common fund, listing five class action cases awarding 33.3% fees, and awarding a maximum fee of 36% on a $127 million settlement fund); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009) (awarding 33.3% fee from the net settlement fund in securities class action); *Jenkins v. Trustmark Nat. Bank*, 3:12-CV-00380-DPJ,

12

2014 WL 1229661 (S.D. Miss. Mar. 25, 2014) (awarding 33.33% fee from the $4 million settlement fund); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (upholding district court's granting of a 33.3% fee of $13.3 million from a $40 million class action settlement fund); *Febus v. Guardian First Funding Grp., LLC*, 870 F. Supp. 2d 337, 339-40 (S.D.N.Y. 2012) (stating that "courts in this Circuit have 'routinely granted' requests for one-third of the fund in cases in which the settlement funds were substantially larger than $850,000" and noting that "a fee that is one-third of the fund is typical"); *Burford v. Cargill, Inc.*, CIV.A. 05-0283, 2012 WL 5471985 (W.D. La. Nov. 8, 2012) (holding that "the benchmark percentage in this case is one-third" of the common fund); *In re Linerboard Antitrust Litig.*, MDL 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004) *amended*, MDL NO. 1261, 2004 WL 1240775 (E.D. Pa. June 4, 2004) (granting a 30% fee plus expenses on a $200 million settlement).

Indeed, only three months ago Judge Saylor of this District approved a fee award of one third of the cash recovered at settlement in an ERISA class action. *See Glass Dimensions, Inc. v. State Street Bank and Trust*, No. 10-10588, Final Order and Judgment Approving Class Action Settlement, ¶12, Dkt. 409 (D. Mass. May 12, 2014) (Porter Dec. Ex. C).

**D.      Class Counsels' Lodestar Confirms the Reasonableness of the Requested Compensation**

The First Circuit does not require that district courts engage in calculating the lodestar when awarding fees based upon the percentage of the fund method. *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F.Supp.2d at 464 (citing *In re Thirteen Appeals,* 56 F.3d at 307). Nevertheless, many courts engage in a lodestar "cross-check" to ensure that the fees are reasonable in light of the actual amount of work performed. *Id.*; *In re Tyco Int'l, Ltd. Multidistrict Litig.* 535 F.Supp.2d at 265 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002)). When the lodestar is used as a cross-check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on

13

the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco* 535 F. Supp. 2d at 270, *citing Thirteen Appeals,* 56 F.3d at 307.

A comparison of Class Counsels' request for an award of fees based upon a percentage of the fund approach with the lodestar in this case confirms the reasonableness of the requested fee. The combined lodestar of all Class Counsel is $1,197,758.50,[4] yielding a multiplier of approximately 3.3. This multiplier is low compared to the average fee request. *See, e.g.*, *In re Relafen*, 231 F.R.D. at 81-82 (citing examples wherein a lodestar multiplier of 4.07 was recognized as "fairly common" and that, generally, multipliers range from 0.6 to as high as 19.6); *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 742 (3d Cir. 2001) (suggesting a multiplier of 3 as the ceiling for a case that was "neither legally nor factually complex," did not require significant motion practice or discovery, and only four months separated filing of the complaint and submission of the settlement agreement).

Ultimately, the question at the heart of all attorneys' fee determinations is whether the proposed fee fairly and reasonably compensates counsel for what they have accomplished, not which method, percentage, or multiplier to apply. *See Branch v. FDIC*, 1998 WL 151249 at *4. Whether considered as a percentage of the class recovery or as a lodestar calculation, the $4 million fee request is reasonable and should be approved by the Court.

### E.    The Requested Awards of Litigation Costs Are Reasonable

The Notice of Proposed Class Action Settlement advised the class that Class Counsel would seek an Order permitting the payment of actual fees and costs expended in prosecuting this action, to be paid from the Settlement Fund. Plaintiff seeks reimbursement from the Settlement Fund of the amount of $155,452.85, representing actual expenses and costs reasonably incurred in connection with this litigation. Class Counsel have submitted declarations identifying these amounts by category of expenditure. *See* Porter Decl. Ex. B; Mougey Decl. Ex. B; Johnson Decl. Ex. B;

---

[4] *See* Porter Decl. Ex. A; Mougey Decl. Ex. A; Johnson Decl. Ex. A; Peiffer Decl. Ex. A.

Peiffer Decl. Ex. B. Although Class Counsel have not provided the Court with invoices, receipts and other documentation of these costs and expenses at this time, they are prepared to do so should the court desire to review such documentation.

Reimbursement of litigation costs from a common fund is warranted for the same reasons as the payment of attorney's fees – to ensure that the beneficiaries of the fund share in the cost of the achieving the benefits. *In re Fidelity/Micron Securities Litig.,* 167 F.3d 735, 737 (1st Cir. 1999). Lawyers responsible for creating a common fund for the benefit of a class are entitled to reasonable expenses necessary to bring the case to conclusion as well as attorney's fees). For this reason, and based on the declarations of counsel, Plaintiff requests that the Court approve payment of $383,815.11 in actual litigation costs from the Settlement Fund.

> **F.    The Requested Awards of Litigation Costs and of Service or Incentive Payments to the Representatives of the Named Plaintiff Are Reasonable**

The Notice of Class Action Settlement also advised Class Members that Class Counsel will seek approval for "a service payment not to exceed $5,000 for each of the named Plaintiffs and class representatives." Class Counsel believe that an award of $1,000 for each of the named Plaintiffs in the Actions is reasonable and request approval for that amount to be paid to each of them from the Settlement Fund. Payment of such amounts from the Settlement Fund is warranted to compensate each of these individuals for the services they provided to the Class in the prosecution of this case on behalf of the class.

"Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit." *In re Compact Disc*, 292 F. Supp. at 189. In re Lupron, 2005 WL 2006833, at *7 (noting that "[i]ncentive awards serve an important function in promoting class action settlements"). "Courts 'routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred

during the course of the class action litigation.'" *Id.*, quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C.2002).

Although courts have considerable discretion in deciding whether to grant requests for incentive awards, the following factors have been identified as criteria that courts "typically" examine when assessing incentive awards: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *In re Puerto Rican Cabotage*, 815 F. Supp. 2d at 468-69.

These factors support the requested incentive award for the named Plaintiffs in the Actions. First, each faced at least some risk that Defendants would prevail in the action and seek and obtain an order requiring that Plaintiffs pay their costs. Each named plaintiff spent considerable time and effort locating and providing documents, participating in interviews with counsel, reviewing and commenting on pleadings, and discussing and approving settlement. Accordingly, they should each be rewarded and compensated for their time and efforts undertaken on behalf of the Class. Porter Dec. ¶12.

The service awards requested here are considerably more modest than incentive payments that have been approved for class representatives in other cases in this circuit. *See, e.g.*, *In re Puerto Rican Cabotage*, 815 F.Supp.2d at 468-9 (approving payment of $8,000 for each of six plaintiffs, even though none had been deposed or subjected to discovery requests); *In re Relafen*, 231 F.R.D. at 82 (approving incentive awards in the range of $8,000 to $14,000 for three categories of named plaintiffs); *In re Lupron*, 228 F.R.D. 75, 98 (D. Mass 2005) (approving incentive awards in the range of $2,500 to $25,000, including $5,000 for consumer plaintiffs who were deposed and $25,000 for institutional plaintiffs, for a total of $100,000); *Bussie v. Allamerica Fin. Corp.*, 1999 WL 342042, *3

(approving incentive awards in the amount of $5,000 each for four named plaintiffs in 1999). Accordingly, Class Counsel respectfully request that the Court approve these payments, in addition to the attorney's fees and litigation costs discussed above.

III.   <u>**CONCLUSION**</u>

The Settlement now before the Court represents the culmination of one and a half years of hard-fought litigation and several months of negotiations, conducted with the assistance of an experienced former federal judge. The Settlement's monetary and non-monetary relief represent an excellent recovery for the Class given the risks involved in continued litigation. The amounts requested above for attorney's fees, litigation costs are demonstrably reasonable. Accordingly, Class Counsel respectfully request that the Court approve the amounts requested in their entirety.

 Dated: August 21, 2014                                    Respectfully submitted,


                                                           /s/ Gregory Y. Porter
                                                           Gregory Y. Porter *admitted pro hac vice*
Garrett W. Wotkyns                                         BAILEY & GLASSER LLP
Michael C. McKay                                           910 17th Street, NW
SCHNEIDER WALLACE                                          Suite 800
COTTRELL KONECKY LLP                                       Washington, DC 20006
8501 North Scottsdale Rd., Suite 270                       Tel: (202) 463-2101
Scottsdale, AZ 85253                                       Fax: (202) 463-2103
Tel: (480) 428-0142
Fax: (866) 505-8036                                        John Roddy, BBO No. 424240
                                                           BAILEY & GLASSER LLP
Peter Mougey                                               125 Summer Street
Laura Dunning                                              Suite 1030
LEVIN, PAPANTONIO, THOMAS,                                 Boston, MA 02110
MITCHELL, RAFFERTY & PROCTOR                               Tel: (617) 439-6730
316 S. Baylen Street, Suite 600                            Fax: (617) 951-3954
Pensacola, FL 32502
Tel: (850) 435-7121                                        Joseph C. Peiffer
Fax: (850) 436-6147                                        Daniel J. Carr
                                                           PEIFFER ROSCA ABDULLAH
                                                           CARR & KANE, LLC
                                                           201 St. Charles Avenue, Suite 4610
                                                           New Orleans, LA 70170
                                                           Tel: (504) 523-2434
                                                           Fax: (504) 523-2464

                                                           *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 21, 2014, I served the foregoing via CM/ECF on all counsel of record.

/s/ Gregory Y. Porter
Gregory Y. Porter